UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

BRENTWOOD OKEECHOBEE, LLC                    Case No.: 10-34278-PGH

    Debtor.                                    Chapter 11

_____/

## DEBTOR-IN-POSSESSION'S EMERGENCY MOTION FOR AUTHORITY TO USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363 AND TO PROVIDE ADEQUATE PROTECTION AND SCHEDULE HEARING

### ** Emergency Hearing Requested Pursuant to Local Rule 9075-1 **

**The above-captioned debtor, requests an emergency hearing in this matter to prevent immediate and irreparable harm that would occur if the Debtor does not have immediate access to use of cash collateral to fund the continued operation of its business, payroll, and critical expenses in order to preserve the value of the estate. As the next payroll for its employees will be due on August 20, 2010, the Debtor respectfully requests that this motion be set for hearing on or before Friday, August 20, 2010.**

Debtor-in-Possession, Brentwood Okeechobee, LLC (the "**Debtor**"), by and through its undersigned proposed counsel, files this Motion for Authority to Use Cash Collateral Pursuant to 11 U.S.C. §§ 105 and 363, and in support thereof, respectfully states as follows:

### JURISDICTION

1.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested is 11 U.S.C. §§ 105 and 363 and Rule 4001(d)(1)(D), Federal Rules of Bankruptcy Procedure.

### BACKGROUND

3.      On August 17, 2010, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "**Petition Date**").

1

4.      Pursuant to Bankruptcy Code sections 1107(a) and 1108, the Debtor is operating its business and managing its affairs as debtor-in possession.  The Debtor is a hotel located at 2200 U.S. Highway 441 SE, Okeechobee, Florida 34974.  As of the date hereof, no trustee, examiner, or statutory committee has been appointed in this Chapter 11 case.

5.      Upon information and belief, the Debtor's prepetition secured creditors are Community South Bank and Florida First Capital Finance Corp., Inc. (collectively, the "**Secured Creditors**").  The Debtor reserves the right to challenge the validity, priority and extent of the Secured Creditors' liens against the Debtor's assets.

6.      Through this Motion, the Debtor seeks an Order of this Court authorizing the Debtor to use cash collateral pursuant to 11 U.S.C. §§ 105 and 363, Federal Rules of Bankruptcy Procedure 4001(b)(2) and Local Rule 4001-3 since any cash collateral generated by the Debtor may constitute the cash collateral of the Secured Creditors.

## CASH COLLATERAL AND THE RELIEF SOUGHT BY THE DEBTORS

7.      The Debtor's use of property of its estate is governed by section 363 of the Bankruptcy Code, which provides in pertinent part that:

> If the business of the debtor is authorized to be operated under section . . . 1108 . . . of this title and unless the court orders otherwise, the [debtor] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1).  A debtor in possession has all of the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in compliance with section 363 of the Bankruptcy Code.  *See* 11 U.S.C. § 1107(a).

8.      When a Chapter 11 debtor-in-possession is authorized to operate its business, it may use property of its estate in the ordinary course of business, but is absolutely prohibited from using

2

cash collateral absent consent of the secured creditor or court authorization. *In re Kahn*, 86 B.R. 506 (Bankr. W.D. Mich. 1988); *In re Westport-Sandpiper Associates Ltd. Partnership*, 116 B.R. 355 (Bankr. D. Conn. 1990) (Debtor may not use cash collateral unless entity that has interest in it consents or debtor proves that interest of that entity is adequately protected).

9.      "Cash collateral" is defined by the Bankruptcy Code as, "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest . . . ." 11 U.S.C. § 363(a).

10.      As set forth in the budget, attached hereto as **Exhibit "A,"** the Debtor requires the use of cash collateral to, among other things, (a) pay the Debtor's employees that are critical to the Debtor's ability to reorganize; and (b) fund all necessary operating expenses of the Debtor's business.

11.      The Debtor will suffer immediate and irreparable harm if it is not authorized to use cash collateral to fund the items set forth in the Budget.  Absent such authorization, the Debtor will not be able to retain key personnel and otherwise maintain and protect its business.    Without the use of cash collateral to pay ongoing operating expenses, the Debtor will be required to discontinue its business operations, which would cause immediate and irreparable harm not only to the Chapter 11 estate but to the potential recovery of creditors.  It is only through the Debtor's continued business activities and the generation of revenues therefrom that the Debtor will be able to continue operating.

12.      The Debtor acknowledges that the Secured Creditors, assuming that they are properly secured and perfected in the cash collateral, may have a lien on the cash collateral in accordance with 11 U.S.C. §§ 361 and 363.  In connection therewith and in an abundance of

3

caution, the Debtor seeks the use of cash collateral in its operations and, as such, if necessary, it will provide adequate protection to the Secured Creditors pursuant to the terms hereof.

13.     In addition to the protections set forth below, the Secured Creditors are adequately protected in that the Debtor's proposed Budget illustrates that the Debtor will be operating on a cash flow positive basis.   In order to ensure that the Debtor operates effectively throughout this bankruptcy proceeding, the Debtor also requests permission to:  (i) to exceed any line item on the budget by an amount equal to ten (10%) percent of each such line item; or (ii) to exceed any line item by more than ten (10%) percent so long as the total of all amounts in excess of all line items for the Budget do not exceed ten (10%) percent in the aggregate of the total budget.

14.     The Debtor also agrees to grant the Secured Creditors replacement liens on any new receivables generated by the Debtor.  Accordingly, the Secured Creditors' collateral is not being impaired by the Debtor's requested use herein.

15.     Supplemental to the replacement liens, the Debtor will furnish the Secured Creditors with such financial and other information as the Secured Creditors reasonably request with respect to the Debtor's operations.

APPLICABLE AUTHORITY FOR RELIEF REQUESTED

**A. The Secured Creditors Will Be Adequately Protected by Replacement Liens on Post-Petition Assets to the Extent their Prepetition Collateral Is Diminished by the Debtor's Use of Cash Collateral.**

16.     The Bankruptcy Code does not explicitly define "adequate protection" but does provide a non-exclusive list of the means by which a debtor may provide adequate protection, including "other relief" resulting in the "indubitable equivalent" of the secured creditors' interest in such property.  *See* 11 U.S.C. § 361.  Adequate protection may be provided by (1) making a "cash payment or periodic cash payments to [an] entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title . . . results in a decrease in the value of

4

[the] entity's interest in such property," (2) "providing to [an] entity an additional or replacement lien to the extent that such . . . use . . . results in a decrease in the value of [the] entity's interest in such property" or (3) "granting such other relief. . . as will result in the realization by [an] entity of the indubitable equivalent of [the] entity's interest in such property." 11 U.S.C. §§ 361(1), (2), (3); *see In re Potvin Lumber Company, Inc.*, 24 B.R. 54 (Bankr. D. Vt. 1982) (ordering that the debtor could use cash collateral, and finding that the bank was adequately protected because the total value of the debtor's personal property exceeded the bank's indebtedness); *see also In re Coventry Commons Associates*, 149 B.R. 109 (Bankr. E.D. Mich. 1992); *In re Resolution Trust Company v. Swedeland Development Group. Inc.* (*In re Swedeland Development Group, Inc.*), 16 F.3d 552, 564 (3d Cir. 1994).

17.    Adequate protection is to be determined on a case-by-case factual analysis. *See Mbank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396 (10th Cir. 1987); *In re Martin*, 761 F.2d 472 (8th Cir. 1985); *see also* S. Rep. No. 95-989, 95th Cong., 2d Sess. 54 (1978).    For example, in *O'Connor*, the court held that "[i]n order to encourage the Debtors' efforts in the formative period prior to the proposal of a reorganization, the court must be flexible in applying the adequate protection standard." *O'Connor*, 808 F.2d at 1396. (citations omitted). *See also In re Quality Interiors, Inc.*, 127 BR. 391 (Bankr. N.D. Ohio 1991) (holding that the granting of a replacement lien provided adequate protection).

18.    Adequate protection is meant to ensure that the secured creditors receive the value for which it originally bargained pre-bankruptcy. *Swedeland Dev. Group., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) (citing *In re O'Connor*, 808 F.2d 393, 1396–97 (10h Cir. 1987)).    Courts have noted that the essence of adequate protection is the assurance of the maintenance and continued responsibility of the lien value during the interim between the filing and the confirmation. *In re Arriens*, 25 B.R. 79, 81 (Bankr. D. or. 1982).    The focus of the requirement is to protect secured

5

creditors from diminution in value during the use period. *See In Re Kain*, 86 B.R. 506, 513 (Bankr. W.D. Mich. 1988); *In re Becker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986); *In re Ledgmere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990).

19.    Simply stated, adequate protection is necessary only to the extent the use of the secured creditor's collateral will result in a decrease in "the value of such entity's interest in such property." 11 U.S.C. §§ 361, 363(e); *see United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 370–73 (1988) (the "interest in property" entitled to protection is "the value of the collateral" securing the claim). As the court in *In re Megan Racine Assoc., Inc.*, 202 B.R. 660 (Bankr. S.D.N.Y. 1996) noted:

> Adequate protection . . . is intended to compensate a creditor for any decrease in the value of its security interest in collateral during the pendency of the debtor's reorganization that is due to the imposition of the stay or is traceable to the use of such property.

20.    Here, the Secured Creditors are only entitled to protection against the decline in value of its prepetition collateral resulting from the Debtor's use of cash collateral. The granting of replacement liens provides the Secured Creditors with more than sufficient adequate protection within the meaning of sections 361 and 363(e) of the Bankruptcy Code. As noted above, section 361(2) of the Bankruptcy Code expressly provides that the granting of a replacement lien constitutes a means of providing adequate protection. 11 U.S.C. § 361(2).

21.    In the instant case, granting the Secured Creditor replacement liens on postpetition collateral to the extent its prepetition collateral is diminished by the Debtor's use of cash collateral will provide them with sufficient adequate protection. *See., e.g., O'Connor, 808 F.2d 1393*; *In re Coody*, 59 B.R. 164, 167 (Bankr. M.D. Ga. 1986); *In re Dixie-Shamrock Oil & Gas, Inc.*, 39 B.R. 115, 118 (Bankr. M.D. Tenn. 1984).

**B. The Use of Cash Collateral will Preserve the Debtor's Going Concern Value, Which will Inure to the Benefit of the Secured Creditors and other Creditors.**

22.     The continued operation of Debtor's business will preserve its going concern value, enable the Debtor to capitalize on that value through a reorganization strategy, and ultimately facilitate the Debtor's ability to confirm a Chapter 11 plan.  However, if the Debtor is not allowed to use cash collateral, it will be unable to operate.

23.     The Debtor will use the cash collateral during the interim cash collateral period to fund all necessary operating expenses of the Debtor's business.

24.     It is well established that a bankruptcy court, where possible, should resolve issues in favor of preserving the business of the debtor as a going concern.

> A debtor, attempting to reorganize a business under Chapter 11, clearly has a compelling need to use "cash collateral" in its efforts to rebuild.  Without the availability of cash to meet daily operating expenses such as rent, payroll, utilities, etc., the congressional policy favoring rehabilitation over economic failure would be frustrated.

*In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017, 1019 (11th Cir. 1984).

25.     Accordingly, courts authorize the use of cash collateral to enhance or preserve the debtor's going concern value.  For example, in *In re Stein*, 19 B.R. 458 (Bankr. E.D. Pa 1982), the court allowed a debtor to use cash collateral where the secured party was undersecured, finding that the use of cash collateral was necessary to the debtors' continued operations and the creditor's secured position can only be enhanced by the continued operation of the debtor's business.  *Id.* At 460; *see also Federal Nat. Mort. v. Dacon Bolingbrook Assos.*, 153 B.R. 204, 214 (N.D. Ill. 1993) (security interest protected to extent debtor reinvested rents in operation and maintenance of the property); *In re Constable Plaza Assoc.*, 125 B.R. 98, 105 (Bankr. S.D.N.Y. 1991) (debtor's reinvestment of rents to maintain and operate office building will serve to preserve or enhance the value of the building which, in turn, will protect the collateral covered by [the] mortgage); *In re Dynaco Corp.*, 162 B.R. 389, 395-96 (Bankr. D. N.H. 1983) (finding that the alternative to the

debtor's use of cash collateral, termination of its business, would doom reorganization and any chance to maximize value for all creditors); *In re Karl A. Neise, Inc.*, 156 B.R. 600, 602 (Bankr. S.D. Fla. 1981) (marginally secured creditor adequately protected by lien on postpetition property acquired by debtor, debtors can use cash collateral in the normal operation of their business).

26. If the Debtor cannot use cash collateral, it will be forced to cease operations, which will severely disrupt the Debtor's entire operations. By contrast, granting authority will allow the Debtor to maintain operations and preserve the going concern value of its business which will inure to the benefit of the Secured Creditors and all other creditors

27. Courts in this District have granted relief similar to the relief sought in this Motion in other recent Chapter 11 cases. *See, e.g., In re Tousa, Inc.*, No. 08-10928, Docket No. 113 (Bankr. S.D. Fla. Jan. 31, 2008); *see also In re All American Semiconductor, Inc.*, No. 07-12963 (Bankr. S.D. Fla. May 21, 2007) (authorizing the use of cash collateral in accordance with the terms of the DIP credit documents and the approved budget for DIP financing); *In re ITG Vegas, Inc.*, No. 06-16350, Docket No. 20 (Bankr. S.D. Fla. Dec. 7, 2006); *In re Gemini Cargo Logistics, Inc.*, No. 06-10870 (Bankr. S.D. Fla. Apr. 10, 2006).

33. The Debtor believes that use of cash collateral pursuant to the terms and conditions set forth above is fair and reasonable and adequately protects the Secured Creditors. The combination of: (i) the Debtor's ability to preserve the going concern value of the business with the use of cash collateral; and (ii) providing the Secured Creditors with the other protections set forth herein, adequately protects their alleged secured position under §361(2) and (3). For all of the reasons stated above, this Court's approval of the Debtor's use of cash collateral is proper herein.

34. The Debtor believes that the approval of this motion is in the best interests of the Debtor, its creditors and its estates because it will enable the Debtor to (i) continue the orderly operation of its business and avoid an immediate total shutdown of operations; (ii) meet its

obligations for payroll, necessary ordinary course expenditures, and other operating expenses; and (iii) make payments authorized under other orders entered by this Court, thereby avoiding immediate and irreparable harm to the Debtor's estates.

35.     A proposed order granting the relief requested is attached hereto as **Exhibit B.**

**WHEREFORE**, the Debtor respectfully requests that this Court enter an order:  (granting the motion); (ii) authorizing the Debtor's use of cash collateral in accordance with the attached Budget and provide related adequate protection; (iii) permitting the Debtor to deviate from the Budget in the amount of ten (10) percent to the extent necessary; (iv) scheduling a final hearing in order to authorize the Debtor's use of cash collateral; and (v) granting such other and further relief as this Court may deem just and proper.

> **Respectfully submitted,**
> Bradley S. Shraiberg, Esq.
> **SHRAIBERG, FERRARA & LANDAU, P.A.**
> Proposed Attorneys for the Debtor
> 2385 NW Executive Center Drive, #300
> Boca Raton, Florida 33431
> Telephone: 561-443-0800
> Facsimile: 561-998-0047
> Email: bshraiberg@sfl-pa.com
>
> By:   /s/ Bradley S. Shraiberg
>          Bradley S. Shraiberg
>          Fla. Bar No. 121622
>          Lenore M. Rosetto
>          Fla. Bar No. 064448

## ATTORNEY CERTIFICATION

**I HEREBY CERTIFY** that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via Notice of Electronic Filing to those parties registered to receive electronic notices in this case, this 18th day of August, 2010.

_/s/ Bradley S. Shraiberg_
Bradley S. Shraiberg

## Projected Month Budget-

Ordinary Income/Expense

|  |  | 8/17/10 - 9/16/10 |
|---|---|---:|
| **Income** |  | 60,000.00 |
|  | Bar Revenue | 12,000.00 |
|  | Sales Tax | 7,200.00 |
| **Total Income** |  | 79,200.00 |
|  |  |  |
| **Expense** |  |  |
|  | ADAMS REMCO | 25 |
|  | AMERICAN HOTEL REGISTER COMPANY | 200 |
|  | AT&T TELEPHONE | 250 |
|  | BERNIE LITTLE DISTRIBURTOR (BAR) | 2000 |
|  | BIG EASY MEDIA PRODUCTION | 200 |
|  | BOOKING.COM (COMMISIONS) | 100 |
|  | C.J WHOLESALE (BAR INVENTORY) | 500 |
|  | CENTURYLINK (TELEPHONE) | 750 |
|  | COCA COLA | 500 |
|  | DIRECTV | 450 |
|  | DISH NETWORK | 300 |
|  | E.T. SUPPLIES (HOTEL SUPPLIES) | 400 |
|  | ECOLAB (HOTEL LAUNDRY SUPP) | 300 |
|  | ELITE REPAIR SERVICE (MAINT LABOR) | 2000 |
|  | FERREL GAS (GAS) | 800 |
|  | FLORIDA DEPT OF REVENUE (SALES TAX) | 7,200.00 |
|  | FLORIDA POWER AND LIGHT (UTIL) | 4500 |
|  | Insurance (property) | 2000 |
|  | HOME DEPOT | 500 |
|  | JJ TAYLOR (BAR LIQUOR) | 1000 |
|  | J & J SNACKS | 500 |
|  | JOE RENTA (BAR DJ) | 2000 |
|  | MAGNUSSEN HOTEL (COMMISSIONS) | 500 |
|  | NATIONAL REPUBLIC | 2000 |
|  | OFFICE DEPOT | 200 |
|  | OKEECHOBEE OXYGEN (BAR) | 300 |
|  | OKEECHOBEE UTILITY AUTORITY(WATER) | 3500 |
|  | ORKIN PEST CONTROL | 215 |
|  | PAYROLL | 24000 |
|  | PETTY CASH | 1000 |
|  | PREMIER BEVERAGE COMPANY | 2000 |
|  | QUALITY LAWN CARE | 300 |
|  | S & D COFEE | 300 |
|  | SOUTHERN BIKE NIGHTS | 200 |
|  | SOUTHERN WINE & SPIRITS (BAR) | 2000 |
|  | SPRINT WIRELESS | 99 |
|  | SVI SYSTEMS (FIRE ALARM MONITOR) | 100 |
|  | WASTE MANAGEMENT | 455 |
|  | VISTA PRINT | 100 |
|  | management fee | 5000 |
| **Total Expense:** |  | 68744 |
| **Net Income** |  | 10,456.00 |



EXHIBIT

B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:

BRENTWOOD OKEECHOBEE, LLC                     Case No.: 10-34278-PGH

        Debtor.                               Chapter 11
_____/

**ORDER GRANTING DEBTOR-IN POSSESSION'S EMERGENCY MOTION FOR
AUTHORITY TO USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363
AND TO PROVIDE ADEQUATE PROTECTION AND SCHEDULE HEARING**

**THIS MATTER** came before the Court for hearing on _____ _____, 2010 upon

Brentwood Okeechobee, LLC's (the "**Debtor**") *Emergency Motion for Authority to Use Cash*

*Collateral Pursuant to 11 U.S.C. § 363 and to Provide Adequate Protection and Schedule*

*Hearing* (the "**Motion**").   Having reviewed the Motion, hearing argument of counsel, and the

Court being otherwise fully advised in the premises, it is hereby

**ORDERED AND ADJUDGED** as follows:

1.      The Debtor's Motion is **GRANTED**.

2.     <u>Use of Cash Collateral</u>.  The Debtor is authorized to use cash collateral as defined in Section 363(a) of the Bankruptcy Code to pay in the ordinary course of its business for the purposes contained in the budget attached as **Exhibit "A"** (the "**Budget**") through and including _____ \_\_\_\_, 2010.  The Debtor is also authorized: (i) to exceed any line item on the budget by an amount equal to ten (10) percent of each such line item; or (ii) to exceed any line item by more than ten (10) percent so long as the total of all amounts in excess of all line items for the Budget do not exceed ten (10) percent in the aggregate of the total Budget.

3.     <u>Replacement Liens as Adequate Protection to Secured Creditors</u>.  Notwithstanding the provisions of Section 552(a) of the Bankruptcy Code, and in addition to the security interests preserved by Section 552(b) of the Bankruptcy Code, the Debtor grants in favor of the Secured Creditors[1], as security for all indebtedness that is owed by the Debtor to the Secured Creditors, under its secured documentation, but only to the extent that Secured Creditors' cash collateral is used by the Debtor, a first priority post-petition security interest and lien in, to and against all of the Debtor's assets, to the same extent that the Secured Creditors held a properly perfected prepetition security interest in such assets, which are or have been acquired, generated or received by the Debtor subsequent to the Petition Date.  Under no circumstance shall the Secured Creditors have a lien on any of the Debtor's assets that it did not have a right to prepetition.

4.     <u>No Novation</u>.  This Order shall not cause a novation of any of Secured Creditors' secured documentation.

5.     <u>Creditor Not Deemed Owner or Operator</u>.  Solely by agreeing to the use of cash collateral by the Debtor, the Secured Creditors shall not be deemed to have assumed any liability to any third person, and shall not be deemed to be in control of the operations of the Debtor or to

---

[1]     All capitalized terms shall have the meaning ascribed to them in the Motion unless otherwise indicated herein.

2

be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtor or of its assets.

6.      Non-Waiver of Rights and Remedies. This Order is not intended to and shall not prejudice, alter, affect or waive any rights and/or remedies of Debtor or Secured Creditors under the Bankruptcy Code or applicable non-bankruptcy law (including, but not limited to, all matters pertaining to cash and other collateral) and does not bind any subsequently appointed trustee or committee.

7.      Duration. The provisions of this Order shall remain in effect until _____ ____, 2010.

8.      Further Hearing. This Court shall hold a further hearing on the Debtor's use of cash collateral on _____ ____, 2010 at __:____ _.m. at the United States Bankruptcy Courthouse, 1515 North Flagler Drive, 8th Floor, Courtroom A, West Palm Beach, Florida 33401.

###

**SUBMITTED BY:**
Bradley S. Shraiberg, Esq.
Shraiberg, Ferrara & Landau, P.A.
Proposed Counsel for Debtor
2385 N.W. Executive Center Drive, Suite 300
Boca Raton, Florida 33431
Telephone: (561) 443-0800
Facsimile: (561) 998-0047

Copy to: Bradley S. Shraiberg, Esq., 2385 NW Executive Center Dr., Suite 300, Boca Raton, FL 33431.
[Attorney Shraiberg is directed to serve a copy of this Order upon all interested parties.]

3