# EXHIBIT "A"

Community South Bank

**$2,231,500.00**                                    December 2P, 2007
**CSB LOAN NO.: 7878**

# PROMISSORY NOTE

FOR VALUE RECEIVED, the undersigned, jointly and severally if more than one, promises to pay to the order of Community South Bank or its successors or assigns at 625 S. Gay Street, Suite 450, Knoxville, Tennessee 37902, or such other place as the holder hereof may from time to time designate in writing, the principal sum of TWO MILLION TWO HUNDRED THIRTY-ONE THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($2,231,500.00), plus interest on the unpaid principal balance at the rate specified below. Interest shall be calculated on a 360/365 simple interest basis; that is, by applying the ratio of the annual interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding.

For a fixed 25-year period (the "25-Year Fixed Period"), the interest rate will equal the 10-Year SWAP Rate on the date of closing document preparation plus three and 10/100ths percent (3.10%). For purposes of this Note, the 10-year SWAP Rate is four and 89/100ths percent (4.89%); accordingly the rate of interest is seven and 99/100ths percent (7.99%).

The repayment of this note shall be as follows:

(i)    One (1) interest only payment will be due and payable on February 5, 2008 to cover the interest accrued on the loan from the date of funding until February 5, 2008. The interest only payment will be approximately EIGHTEEN THOUSAND THREE HUNDRED TWENTY-FIVE AND 00/100 DOLLARS ($18,325.00); and then

(ii)   Three hundred (300) monthly installments of principal and interest payments will be due and payable beginning on March 5, 2008 and continuing on the same day of each and every month thereafter through and including February 5, 2033. The first scheduled payment shall be approximately SEVENTEEN THOUSAND FOUR HUNDRED AND 00/100 DOLLARS ($17,400.00).

(iii)  On February 5, 2033 (the "Maturity Date"), the entire outstanding principal balance of the indebtedness hereby evidenced, together with all accrued but unpaid interest thereon, and all other sums due to holder hereunder shall be due and payable in full.

Payments, when made, shall be applied in a manner and order according to the sole discretion of the holder of this Note. Any funds submitted for payment that are in excess of the scheduled monthly payment will be considered as principal pre-payments, subject to all applicable pre-payment penalties, and will not advance or postpone the due date of the next scheduled monthly payment.

D.P.

If any payment required to be paid by this Note is not paid in full within ten (10) days after its scheduled due date, the holder hereof may assess a late charge in the amount of five percent (5%) of the unpaid amount of the payment, or the maximum permitted by applicable law, whichever is less.

The undersigned and all guarantors and endorsers of this Note waive presentment, demand, protest and notice of non-payment and each of the undersigned is bound as a principal and not as a surety. The undersigned and all guarantors and endorsers hereof agree to any extensions of time of payment and partial payment, before, at or after maturity, without notice. This Note shall bear interest at the rate of five points (5.00%) per annum above the interest rate otherwise payable under the terms of this Note after maturity or in the event of default until paid in full, or the maximum permitted by applicable law, whichever is less.

This Note and any extensions or renewals hereof is secured by (i) that certain Mortgage dated of even date herewith and recorded in the Office of the Records of Okeechobee County, Florida, and any and all amendments and replacements thereto, executed by the undersigned in favor of Community South Bank and (ii) other security.

Failure to make any payment when due, or any default under any encumbrance or agreement securing this Note, or any default in any document executed simultaneously herewith in connection with the loan, shall cause the entire remaining unpaid balance of principal and interest to be declared immediately due and payable at the option of the holder of this Note.

In the event holder shall employ counsel to collect this obligation or to administer, protect or foreclose the security given in connection herewith, the undersigned, jointly and severally if more than one, agrees to pay reasonable attorney's fees incurred by the holder of this Note for services of such counsel, whether or not suit is brought, plus costs incurred in connection therewith.

There will be a 5% prepayment penalty during the first seven (7) years of the loan. Borrower may prepay up to 10% of the original Loan amount in any anniversary year without incurring a prepayment penalty. No prepayments exceeding 10% may be made in any anniversary year without incurring a prepayment penalty. The prepayment penalty will be calculated using the 5% prepayment penalty multiplied by the principal amount paid in excess of the 10% allowed. If the loan is paid in full within the first anniversary year of the Note, the prepayment penalty will be calculated on the original loan amount.

This Promissory Note will be governed by, construed and enforced in accordance with federal law and the laws of the State of Tennessee, except and only to the extent of procedural matters related to the perfection and enforcement of Lender's rights and remedies against the property, secured by the Mortgage; which matters shall be governed by the laws of the State of Florida. However, in the event that the enforceability or validity of any provision of this Promissory Note is challenged or questioned, such provision shall be governed by which whichever applicable state or federal law would uphold or would enforce such challenged or questioned provision. The loan transaction which is evidenced by this Promissory Note and the Mortgage has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of Tennessee.

- 2 -

D. P.

If the Note is mutilated, lost, stolen or destroyed, then upon surrender thereof (if mutilated) or receipt of evidence and indemnity (if lost, stolen or destroyed) the undersigned shall execute and deliver a new note of like tenor, which shall show all payments which have been made on account of the principal hereof.

IN WITNESS WHEREOF, the undersigned has executed this Note under seal as of the date first above written.

BRENTWOOD OKEECHOBEE, LLC

By: _____

Dharmesh Patel, Authorized Member

- 3 -

D. P.

# LOAN AGREEMENT

**CSB LOAN NO.:** <u>7878</u>

THIS LOAN AGREEMENT, made and entered into this 28th day of December, 2007, by and between **BRENTWOOD OKEECHOBEE, LLC** (the "Borrower"), and COMMUNITY SOUTH BANK ("Lender").

## W I T N E S S E T H:

WHEREAS, Borrower desires financing on certain real property located in Okeechobee County, Florida, more particularly described in Exhibit "A" attached hereto and by this reference made a part hereof ("Property");

WHEREAS, of even date herewith, Lender and Borrower entered into that certain loan evidenced by a Promissory Note wherein the Lender agreed to provide a loan (the "Loan") to Borrower for up to TWO MILLION TWO HUNDRED THIRTY-ONE THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($2,231,500.00) for the acquisition of a hotel facility; and

WHEREAS, in order to loan funds to Borrower, Lender enters into this Loan Agreement with Borrower for the purposes herein contained; and

WHEREAS, the loan made hereunder will be secured in part by a first security interest in the Property, and a first security interest in the furniture, fixtures, equipment, inventory, accounts, accounts receivable, instruments, chattel paper and intangibles located at the Property or wherever located.

NOW, THEREFORE, for and in consideration of the premises, the sum of Ten ($10.00) Dollars and other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

## ARTICLE I
## AMOUNT AND TERMS OF LOAN

1.1    RECITALS.  Each of the above recitals are hereby incorporated into and made a part of this Agreement by this reference.

1.2    LOAN AND NOTE.  The term "Loan" herein shall refer to the indebtedness of Borrower to Lender evidenced by a Note in the original principal amount of TWO MILLION TWO HUNDRED THIRTY-ONE THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($2,231,500.00) in form satisfactory to Lender (the "Note").

## ARTICLE II
## CONDITION OF LENDING

2.1    CONDITIONS PRECEDENT TO THE LOAN.  As a condition precedent to Lender making the Loan, the Borrower and/or **DHARMESH PATEL AND SUKETU PATEL**

*D. P.*

- 1 -

(the "Guarantor") shall deliver to Lender on or before the date of the Loan closing, the following, in form and substance satisfactory to Lender:

    (a)    The Note;

    (b)    The Mortgage;

    (c)    Security Agreement;

    (d)    UCC-1 Financing Statement;

    (e)    Evidence satisfactory to Lender of ownership of the Collateral by Borrower free and clear of encumbrances of any kind;

    (f)    Assignment of Leases and Rents;

    (g)    Such other documents as reasonably may be required by the Lender or Lender's counsel.

The Loan documents as provided above (collectively, the "Loan Documents"), when prepared, shall set forth the matters contained in the Loan Agreement and contain such other provisions as are deemed necessary or desirable by Lender. The form and substance of all such documents must be satisfactory to Lender prior to disbursement by Lender of any of the proceeds of the Loan.

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES OF BORROWER

The Borrower represents and warrants to, and agrees with the Lender as follows:

3.1    POWER AND AUTHORIZATION.

    (a)    The Borrower has authorized the execution and delivery of the Note and all other documents contemplated by this Loan Agreement, and such execution and delivery will not violate any law, or any other agreement to which Borrower is a party.

    (b)    This Loan Agreement constitutes, and upon execution and delivery thereof, the Note, the Mortgage, and the ancillary documents will constitute, legal, valid and binding obligations of the Borrower enforceable against the Borrower.

3.2    FINANCIAL CONDITION. The reports and financial statements of Borrower and Guarantor submitted to Lender in connection with the Loan have been prepared from Borrower's or Guarantor's books and records in accordance with generally accepted accounting principles and practices, consistently applied, and fairly reflect the financial condition of Borrower and Guarantor for the periods therein defined. No material adverse changes have since occurred.

Except as disclosed in the aforesaid reports and financial statements, Borrower:

- 2 -

*D. P.*

(a)    Has not incurred any debts, liabilities or other obligations nor committed to incur any debts, liabilities or obligations;

(b)    Has no liabilities, direct or contingent;

(c)    Has made no investments in, advances to, or guaranties or obligations of any other company, person, firm, corporation, or other entity;

(d)    Is not subject to any judgment, nor are there any liens, encumbrances or security interests outstanding against Borrower or any of its properties.

3.3    LITIGATION. There is no litigation, proceeding, claim or dispute pending or threatened against Borrower, the adverse determination of which would materially affect Borrower's ability to repay the loan or otherwise perform hereunder.

## ARTICLE IV
## COVENANTS BY BORROWER

Until all the obligations of Borrower under this Agreement have been performed and paid in full, Borrower covenants and agrees as follows:

4.1    INSURANCE. Borrower shall maintain or require Guarantor to maintain insurance on the Collateral (hereinafter defined) as described in Article VII hereof in such amounts and against such hazards and liabilities as is customarily maintained by other companies in the same geographical area operating similar businesses or as may be otherwise requested by the Lender. All such policies of insurance shall be in form and substance and with insurance companies satisfactory to Lender, and Borrower shall deliver evidence thereof to Lender upon request. Further, upon request, Lender shall be designated as loss payee or as mortgagee under any such policies, as its interests may appear.

4.2    MAINTENANCE OF BUSINESS AND CORPORATE EXISTENCE. Borrower shall comply with all valid and applicable statutes, ordinances, rules and regulations and shall keep in force and effect all licenses, permits, bonds and franchises necessary for the proper conduct of its business.

4.3    ADVERSE CHANGES AND LITIGATION. Borrower shall immediately inform Lender of any material adverse change in its financial condition, or the financial condition of Guarantor, and shall promptly inform Lender of any litigation or threatened litigation or of the occurrence of any other event or circumstance which might substantially affect the financial condition or business of Borrower or Guarantor.

4.4    MANAGEMENT AND OWNERSHIP. No material adverse change shall be made without the prior written consent of Lender in the management or ownership of Borrower, or in the manner in which its business is conducted. Said consent shall not be unreasonably withheld by Lender.

4.5    FINANCIAL STATEMENTS. Within one hundred twenty (120) days of Borrower's fiscal year end, Borrower and Guarantor shall furnish to Lender a copy of their compiled financial statements. Borrower's and Guarantor's financial statements shall contain a

*D.P.*

balance sheet, profit and loss statement and aging of accounts receivable and accounts payable, all in reasonable detail, prepared in accordance with generally accepted accounting principles, consistently applied. Each set of financial statements shall be prepared by a certified public accountant or accountants acceptable to Lender and certified by a duly authorized officer of Borrower and Guarantor to be correct and accurate. Borrower and Guarantor shall also furnish a copy of its income tax returns, and such other or additional financial information as Lender may from time to time request. Borrower and Guarantor shall also furnish evidence of payment of real estate taxes on the Property to Lender on an annual basis.

4.6    OTHER DEBTS. Other than the loan from Lender of even date herein in the principal amount of $2,231,500.00, and that certain subordinate loan to lender of even date herein in the principal amounts of $1,562,000.00, the Borrower shall not directly or indirectly incur, create, assume or permit to exist any obligation for payment of borrowed money, excepting only unsecured current liabilities incurred in the ordinary course of business and obligations contemplated by this Agreement, without the express written consent of Lender, which consent shall not be unreasonably withheld. Further, Borrower shall not guarantee the obligations of any person or entity, excepting only obligations contemplated by this Agreement.

4.7    SALE OF COLLATERAL. Borrower shall not sell, lease, transfer or otherwise dispose of any of the Collateral as described in ARTICLE VII hereof, other than in the ordinary course of Borrower's business. If Borrower should desire to sell any of the Collateral, a release price therefor will be determined at the sole discretion of Lender, and upon the sale of that Collateral, the release price will be paid over by Borrower to Lender and applied by Lender to payments due on the Note, in inverse order of the due dates, and Lender shall thereupon release its lien or security interest upon the Collateral sold.

4.8    BULK SALE. The Borrower shall not, without the prior written consent of the Lender, sell, transfer or convey all or any part of its interest in its assets to another entity.

4.9    ENCUMBRANCES. Borrower shall not incur or permit to exist nor allow Guarantor to incur or permit to exist any encumbrance, pledge or lien upon or against any of the Collateral, except:

(a)    Liens or security interests required or expressly contemplated or permitted by this Agreement;

(b)    Liens for taxes, assessments and other governmental charges not yet due and liens of carriers, warehousemen, mechanics and materialmen incurred in the ordinary course of business for sums not yet due; and

(c)    Tax liens which are being contested in good faith.

4.10    TAXES. Borrower shall pay promptly, when due, all taxes, assessments and governmental charges or levies imposed upon the Borrower or upon the income or any property of the Borrower, as well as all claims of any kind (including claims for labor, material, supplies or rent) which, if unpaid, might become a lien upon any or all of the Collateral.

4.11    EXAMINATION OF RECORDS. Borrower shall permit any representative of Lender to examine and to audit any or all of Borrower's books and records and to copy portions

- 4 -

D.P.

thereof, and to visit and inspect any of the Collateral upon receipt of reasonable notification and request.

## ARTICLE V
## EVENTS OF DEFAULT

The occurrence of any one or more of the following shall constitute an "Event of Default":

(a)    Nonpayment, when due, of any principal, accrued interest, premium, fee or other charge due under the Note.

(b)    Default by Borrower in the due observance or performance of any term, covenant, condition or agreement on its part to be performed under this Loan Agreement, the Note, or under any other document contemplated by this Loan Agreement.

(c)    If Borrower shall:

    (1)    Make a general assignment for the benefit of its creditors;

    (2)    File a voluntary petition in bankruptcy;

    (3)    Be adjudicated as bankrupt or insolvent;

    (4)    File any petition or answer seeking, consenting to, or acquiescing in, reorganization, arrangement, composition, liquidation, dissolution or similar relief, under any present or future statute, law or regulation;

    (5)    File an answer admitting or failing to deny the material allegations of the petition against it for any such relief;

    (6)    Admit in writing its inability to pay its debts as they mature;

    (7)    Discontinue business; or

    (8)    Be unable to pay debts as they become due.

(d)    Borrower fails to have vacated or set aside within thirty (30) days of its entry any court order appointing a receiver or trustee for all or a substantial portion of the Borrower's property.

(e)    Any warranty, representation or statements made or furnished to Lender by Borrower in connection with the Loan or in connection with this Agreement (including any warranty, representation or statement in the application of Borrower for the Loan or in any accompanying financial statements) or to induce Lender to make the Loan, proves to be untrue, misleading or false in any material respect.

(f)    Borrower suffers or permits any lien, encumbrance or security interest to attach to any of its property, except as herein otherwise expressly permitted, or if any judgment shall be entered against Borrower or any attachment shall be made against any property of

- 5 -

B. P

Borrower, which judgment or attachment shall remain undischarged, unbonded, or undismissed for a period of ten (10) days.

(g)    Borrower defaults in the payment of any principal or interest on any obligation to Lender or to any other creditor.

(h)    Borrower shall sell, lease, or otherwise transfer or convey any of the Collateral, or any interest therein without Lender's prior written approval, except as herein otherwise expressly permitted.

## ARTICLE VI
## REMEDIES ON EVENT OF DEFAULT

6.1    DECLARE NOTE DUE. Upon the occurrence of any Event of Default as defined in this Agreement, the Note, the Mortgage, or any other document contemplated by this Agreement, then in any such event, Lender at its option, may declare the entire unpaid balance of the Note to be forthwith due and payable, and thereupon such balance shall become so due and payable without presentment, protest or further demand or notice of any kind, all of which are hereby expressly waived, and Borrower will forthwith pay to Lender the entire principal of and interest accrued on the Note.

6.2    OTHER REMEDIES. Upon the occurrence or discovery of an Event of Default, the Lender shall, in addition to its option to declare the entire unpaid amount of the Note due and payable, at its option:

(a)    Move to protect its rights and remedies as a secured party under the Mortgage, by extrajudicial authority as set forth in that instrument, by action at law or equity, or by any other lawful remedy to enforce payment.

(b)    Apply the proceeds from any disposition of the Collateral to the satisfaction of the following items in the order in which they are listed:

(1)    The expenses of taking, preserving, insuring, repairing, holding and selling the Collateral, including any legal costs and attorney's fees. If any of the Note shall be referred to an attorney for collection, Borrower and all others liable on the Note, jointly and severally agree to pay reasonable attorney's fees and all costs of collection.

(2)    The unpaid amount of any interest due on the Note, and all other expenses of Lender.

(3)    The unpaid principal amounts of the Note.

(4)    Any other indebtedness of Borrower to Lender.

(5)    The remainder, if any, to Borrower, it being understood and agreed that if the proceeds realized from the disposition of the Collateral shall fail to satisfy items (1) through (4) above, Borrower shall forthwith pay any such deficiency to Lender upon demand.

D. P.

(c)    Exercise any and all rights of setoff which Lender may have against any account, fund or property of any kind, tangible or intangible, belonging to Borrower and which shall be in Lender's possession or under Lender's control.

## ARTICLE VII
## COLLATERAL

Borrower's obligation for payment of the Note shall be collateralized by the following (the "Collateral"):

7.1    MORTGAGE.  A first Mortgage on the Property more particularly described in Exhibit "A" attached hereto and by this reference made a part hereof.

7.2    UCC FINANCING STATEMENT.  A first security interest on all Borrower's furniture, fixtures, equipment, inventory, accounts, accounts receivable, instruments, chattel paper and general intangibles now owned or hereafter acquired and located at the Property, or wherever located.

## ARTICLE VIII
## MISCELLANEOUS

8.1    CLOSING.  The Lender shall not be obligated to make the Loan or advance any funds until Borrower has fully met all requirements herein set forth to be met by Borrower, and until Borrower has paid to Lender and any other parties entitled thereto, all fees and other charges due in connection with the Loan.

8.2    AMENDMENTS.  No amendment of any provisions of this Loan Agreement, nor consent to any departure of Borrower therefrom, shall in any event be effective unless the same shall be in writing and signed by Lender and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

8.3    NOTICES.  All notices and other communications provided for hereunder shall be in writing and mailed or telegraphed or delivered.

If to Borrower:

> Brentwood Okeechobee, LLC
> 2200 Southeast Highway 441
> Okeechobee, Florida 34974

If to Lender:

> Community South Bank
> 625 S. Gay Street, Suite 450
> Knoxville, Tennessee 37902

8.4    GOVERNING LAW AND PARTIES BOUND.  This Agreement will be governed by, construed and enforced in accordance with federal law and the laws of the State of Tennessee,

D. P.

except and only to the extent of procedural matters related to the perfection and enforcement of Lender's rights and remedies against the Property, which matters shall be governed by the laws of the State of Florida. However, in the event that the enforceability or validity of any provision of this Agreement is challenged or questioned, such provision shall be governed by which whichever applicable state or federal law would uphold or would enforce such challenged or questioned provision. The loan transaction which is evidenced by the Note and this Agreement has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of Tennessee.

8.5    ATTORNEY'S FEES AND EXPENSES.  If Lender shall incur any cost or expense, including, without limitation, reasonable attorney's fees, in connection with this Agreement, the Note or the Loan, in any manner whatsoever, direct or indirect, whether with regard to the collection of amounts due, protection of Collateral, defense of Lender or otherwise, upon demand by Lender, Borrower shall pay the same or shall reimburse Lender therefor in full.

8.6    ASSIGNMENT BY BORROWER.  No commitment issued by Lender to Borrower for the Loan nor any of Borrower's rights hereunder shall be assignable by Borrower without the prior written consent of Lender.

8.7    NO WAIVER: REMEDIES.  No failure on the part of the Lender, and no delay in exercising any right under this Loan Agreement, shall operate as a waiver thereof; nor shall any single or partial exercise of any right under this Loan Agreement preclude any other or further exercise thereof or the exercise of any other right.

8.8    SEVERABILITY.  In the event that any clause or provisions of this Loan Agreement or any document or instrument contemplated by this Agreement shall be held to be invalid by any court of competent jurisdiction, the invalidity of such clause or provision shall not affect any of the remaining portions or provisions of this Loan Agreement.

8.9    TIME.  Time is of the essence of this Agreement.

D. C.

IN WITNESS WHEREOF, the parties have executed this Loan Agreement as of the date first above written.

**BORROWER:**

Signed, sealed and delivered in the presence of:

**BRENTWOOD OKEECHOBEE, LLC**

_____
Witness

By: _____
Dharmesh Patel, Authorized Member

_____
Notary Public

J. SUZETTE WELLS
MY COMMISSION # DD 593279
EXPIRES: November 5, 2010
Bonded Thru Budget Notary Services

**LENDER:**

Signed, sealed and delivered in the presence of:

**COMMUNITY SOUTH BANK**

_____
Witness

By: _____
Name: David Crabtree
Title: Assistant Vice President

_____
Notary Public

STATE
OF
TENNESSEE
NOTARY
PUBLIC
KNOX COUNTY

My commission expires Oct. 19, 2009

D. P.

## EXHIBIT "A"
(Legal Description)

Parcel I

A portion of Section 35, Township 37 South, Range 35 East and a Portion of the land lying South of said Section 35 between the Hancock Meander Line and the 17 foot contour line of Lake Okeechobee, and a portion of permanently reclaimed Lake Bottom land in Section 35 and/or South of said Section 35, more particularly described as follows:

Beginning at a point on the East line of the NW 1/4 of said Section 35, where it intersects the South right-of-way line of Conner's Highway (also known as U.S. Highway 441 and Florida State Road 15); thence Southwesterly along a curve to the left in said right-of-way, said curve having a radius of 6306.26 feet and a central angle of 2°00'47", an arc distance of 221.57 feet to the point of tangency; thence bear South 67°36'50" West, along said right-of-way, a distance of 28.43 feet to the POINT OF BEGINNING; thence continue along the aforedescribed line, a distance of 150.00 feet; thence bear South 0°55'52" West, a distance of 875.11 feet to the North right-of-way line of Levee LD-4; thence North 74°35'42" East along said right-of-way a distance of 150.00 feet; thence bear North 0°31'58" East a distance of 892.32 feet, more of less to the POINT OF BEGINNING.

Lying in and comprising a part of Section 35, Township 37 South, Range 35 East, Okeechobee County, Florida.

Parcel II

Commencing at a point on the East Boundary line of the NW 1/4 of Section 35, Township 37 South, Range 35 East, where it intersects the Southerly right-of-way line of S. R. 15 (U.S. 441) thence run South 0°00'28" East, along an extension of the East Boundary line of said NW 1/4, for a distance of 916.72 feet to a point on the Northerly right-of-way line of LD-4 of the central and Southern Florida Flood Control District, thence run South 74°35'42" West along the Northerly right-of-way line of said LD-4 for a distance of 400.00 feet for POINT OF BEGINNING. Thence continue South 74°35'42" West along said right-of-way line of LD-4 for a distance of 298.40 feet; thence run North 0°56'35" East a distance of 864.66 feet to a point on the Southerly right-of-way line of the aforesaid S. R. 15 (U.S. 441); thence run North 67°36'50" East, along the Southerly right-of-way line of said S.R. 15 (U.S. 441), for a distance of 278.43 feet, thence continuing along the Southerly right-of-way line of said S.R. 15 (U.S. 441) run South 22°23'10" East for a distance of 27.00 feet, thence run North 67°36'50" East for a distance of 21.57 feet, thence run South 0°55'52" West for a distance of 874.98 feet to POINT OF BEGINNING.

Lying in and comprising a part of Section 35, Township 37 South, Range 35 East, Okeechobee County, Florida.

Property Address:  2200 Southeast Highway 441, Okeechobee, Florida 34974.

10

D. P.

# EXHIBIT "B"

```
FILE NUM 2008000162
OR BK 00645 PG 1773
SHARON ROBERTSON, CLERK OF CIRCUIT COURT
OKEECHOBEE COUNTY, FL
RECORDED 01/07/2008 12:34:04 PM
RECORDING FEES 86.50
MTG DOC 7,810.25
INTANGIBLE TAX 4,463.00
RECORDED BY G Newbourn
Pgs 1773 - 1782f (10pgs)
```

**RECORDATION REQUESTED BY:**
Community South Bank
625 S. Gay Street, Suite 450
Knoxville, TN  37902

**WHEN RECORDED MAIL TO:**
Community South Bank
625 S. Gay Street, Suite 450
Knoxville, TN  37902

**SEND TAX NOTICES TO:**
Community South Bank
625 S. Gay Street, Suite 460
Knoxville, TN  37902

**CSB LOAN NO.:** 7878

This Mortgage prepared by:

Name:  Courtney Arena, Legal Counsel
Company: Community South Bank
Address: 625 S. Gay Street, Suite 450, Knoxville, TN 37902

---

# MORTGAGE

**MAXIMUM LIEN.  The total amount of indebtedness secured by this Mortgage may decrease or increase from time to time, but the maximum amount of principal indebtedness which may be outstanding at any one time shall not exceed $2,231,500.00, plus interest, and amounts expended or advanced by Lender for the payment of taxes, levies or insurance on the Property, and interest on such amounts.**

**THIS MORTGAGE dated December 28th, 2007, is made and executed between Brentwood Okeechobee, LLC, whose address is 2200 Southeast Highway 441, Okeechobee, FL  34974 (referred to below as "Grantor") and Community South Bank, whose address is 625 S. Gay Street, Suite 450, Knoxville, TN  37902 (referred to below as "Lender").**

GRANT OF MORTGAGE.  For valuable consideration, Grantor mortgages to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Okeechobee County, State of Florida:

See Exhibit "A", which is attached to this Mortgage and made a part of this Mortgage as if

1

D. P.




fully set forth herein.

**The Real Property or its address is commonly known as 2200 Southeast Highway 441, Okeechobee, FL 34974. The Real Property tax identification number is 1-35-37-35-0A00-00011-B000.**

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE IN THE ORIGINAL PRINCIPAL AMOUNT OF $2,231,500.00, THE RELATED DOCUMENTS, AND THIS MORTGAGE. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Subsequent Liens.** Grantor shall not allow any subsequent liens or mortgages on all or any portion of the Property without the prior written consent of Lender.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as

2

D.C.

 

Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Florida law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and reasonable attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under

D.P.



this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Grantor's Report on Insurance.** Upon request of Lender, however not more than once a year, Grantor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Grantor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all intangible personal property taxes, documentary stamp taxes, fees, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax, including without limitation an intangible personal property tax, upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as Default, and Lender may exercise any or all of its available remedies for Default as

4

*D. P.*




provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-In-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**DEFAULT.** Default will occur if payment in full is not made immediately when due.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty that Grantor would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender personally, or by Lender's agents or attorneys, may enter into and upon all or any part of the Property, and may exclude Grantor, Grantor's agents and servants wholly from the Property. Lender may use, operate, manage and control the Property. Lender shall be entitled to collect and receive all earnings, revenues, rents, issues, profits and income of the Property and every part thereof, all of which shall for all purposes constitute property of Grantor. After deducting the expenses of conducting the business thereof, and of all maintenance, repairs, renewals, replacements, alterations, additions, betterments and improvements and amounts necessary to pay for taxes, assessments, insurance and prior or other property charges upon the Property or any part thereof, as well as just and reasonable compensation for the services of Lender. Lender shall apply such monies first to the payment of the principal of the Note, and the interest thereon, when and as the same shall become payable and second to the payment of any other sums required to be paid by Grantor under this Mortgage.

**Appoint Receiver.** In the event of a suit being instituted to foreclose this Mortgage, Lender shall be entitled to apply at any time pending such foreclosure suit to the court having jurisdiction thereof for the appointment of a receiver of any or all of the Property, and of all rents, incomes, profits, issues and revenues thereof, from whatsoever source. The parties agree that the court shall forthwith appoint such receiver with the usual powers and duties of receivers in like cases. Such appointment shall be made by the court as a matter of strict right to Lender and without notice to Grantor, and

D. P.




without reference to the adequacy or inadequacy of the value of the Property, or to Grantor's solvency or any other party defendant to such suit. Grantor hereby specifically waives the right to object to the appointment of a receiver and agrees that such appointment shall be made as an admitted equity and as a matter of absolute right to Lender, and consents to the appointment of any officer or employee of Lender as receiver. Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Tenancy at Sufferance.** If Grantor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Grantor, Grantor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**STATEMENT OF NON-HOMESTEAD.** Grantor on behalf of herself/himself and each and every person claiming by, through or under grantor, hereby grants this Mortgage, free from all rights and benefits under and by virtue of the homestead exemption laws. Grantor hereby releases and waives all rights under and by virtue of the homestead exemption law of this state.

**EXHIBIT "A".** An exhibit, titled "Exhibit "A"," is attached to this Mortgage and by this reference is made a part of this Mortgage just as if all the provisions, terms and conditions of the Exhibit had been fully set forth in this Mortgage.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and

D. P.



agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law.** With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Property, this Mortgage will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the State of Florida. In all other respects, this Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Tennessee without regard to its conflicts of law provisions. However, if there ever is a question about whether any provision of this Mortgage is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Note and this Mortgage has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of Tennessee.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Knox County, State of Tennessee.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waive Jury.** All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

DEFINITIONS. The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means Brentwood Okeechobee, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Default.** The word "Default" means the Default set forth in this Mortgage in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., the Hazardous Waste Management Substances Act of 1998, T.C.A., 68-212-201, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Grantor.** The word "Grantor" means Brentwood Okeechobee, LLC.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity,

D. P.

concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future Improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage.

**Lender.** The word "Lender" means Community South Bank, its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated December 28th, 2007, **in the original principal amount of $2,231,500.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

8

D. R.

GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.

GRANTOR:

BRENTWOOD OKEECHOBEE, LLC

By: _____
Dharmesh Patel, Authorized Member of Brentwood Okeechobee, LLC

WITNESSES:

X _____

_____

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF ___Florida_____              )
                                                      ) SS
COUNTY OF ___Palm Beach_____             )

The foregoing instrument was acknowledged before me this ___28th___ day of December, 2007 by Dharmesh Patel, Authorized Member of Brentwood Okeechobee, LLC on behalf of Brentwood Okeechobee, LLC, a limited liability company. They are personally known to me or have produced ___drivers licence___ as identification.

_____
(Signature of Person Taking Acknowledgment)

___Suzette Wells_____
(Name of Acknowledger Typed, Printed or Stamped)

J. SUZETTE WELLS
MY COMMISSION # DD 593279
EXPIRES: November 5, 2010
Bonded Thru Budget Notary Services

_____
(Title or Rank)

_____
(Serial Number, if any)

9

D. P.

 

## EXHIBIT "A"
(Legal Description)

Parcel I

A portion of Section 35, Township 37 South, Range 35 East and a Portion of the land lying South of said Section 35 between the Hancock Meander Line and the 17 foot contour line of Lake Okeechobee, and a portion of permanently reclaimed Lake Bottom land in Section 35 and/or South of said Section 35, more particularly described as follows:

Beginning at a point on the East line of the NW 1/4 of said Section 35, where it intersects the South right-of-way line of Conner's Highway (also known as U.S. Highway 441 and Florida State Road 15); thence Southwesterly along a curve to the left in said right-of-way, said curve having a radius of 6306.26 feet and a central angle of 2°00'47", an arc distance of 221.57 feet to the point of tangency; thence bear South 67°36'50" West, along said right-of-way, a distance of 28.43 feet to the POINT OF BEGINNING; thence continue along the aforedescribed line, a distance of 150.00 feet; thence bear South 0°55'52" West, a distance of 875.11 feet to the North right-of-way line of Levee LD-4; thence North 74°35'42" East along said right-of-way a distance of 150.00 feet; thence bear North 0°31'58" East a distance of 892.32 feet, more of less to the POINT OF BEGINNING.

Lying in and comprising a part of Section 35, Township 37 South, Range 35 East, Okeechobee County, Florida.

Parcel II

Commencing at a point on the East Boundary line of the NW 1/4 of Section 35, Township 37 South, Range 35 East, where it intersects the Southerly right-of-way line of S. R. 15 (U.S. 441) thence run South 0°00'28" East, along an extension of the East Boundary line of said NW 1/4, for a distance of 916.72 feet to a point on the Northerly right-of-way line of LD-4 of the central and Southern Florida Flood Control District, thence run South 74°35'42" West along the Northerly right-of-way line of said LD-4 for a distance of 400.00 feet for POINT OF BEGINNING. Thence continue South 74°35'42" West along said right-of-way line of LD-4 for a distance of 298.40 feet; thence run North 0°56'35" East a distance of 864.66 feet to a point on the Southerly right-of-way line of the aforesaid S. R. 15 (U.S. 441); thence run North 67°36'50" East, along the Southerly right-of-way line of said S.R. 15 (U.S. 441), for a distance of 278.43 feet, thence continuing along the Southerly right-of-way line of said S.R. 15 (U.S. 441) run South 22°23'10" East for a distance of 27.00 feet, thence run North 67°36'50" East for a distance of 21.57 feet, thence run South 0°55'52" West for a distance of 874.98 feet to POINT OF BEGINNING.

Lying in and comprising a part of Section 35, Township 37 South, Range 35 East, Okeechobee County, Florida.

Property Address:  2200 Southeast Highway 441, Okeechobee, Florida 34974.

D. P.



FILE NUM 2008000163
OR BK 00645 PG 1783
SHARON ROBERTSON, CLERK OF CIRCUIT COURT
OKEECHOBEE COUNTY, FL
RECORDED 01/07/2008 12:34:04 PM
RECORDING FEES 61.00
RECORDED BY G Mewbourn
Pgs 1783 - 1789; (7pgs)

**RECORDATION REQUESTED BY:**
Community South Bank
625 S. Gay Street, Suite 450
Knoxville, TN 37902

**WHEN RECORDED MAIL TO:**
Community South Bank
625 S. Gay Street, Suite 450
Knoxville, TN 37902

**SEND TAX NOTICES TO:**
Community South Bank
625 S. Gay Street, Suite 450
Knoxville, TN 37902

**CSB LOAN NO.:** 7878

This ASSIGNMENT OF RENTS prepared by:

Name:  Courtney Arena, Legal Counsel
Company: Community South Bank
Address: 625 S. Gay Street, Suite 450, Knoxville, TN 37902

---

## ASSIGNMENT OF RENTS

THIS ASSIGNMENT OF RENTS dated December _28th_, 2007, is made and executed between Brentwood Okeechobee, LLC, whose address is 2200 Southeast Highway 441, Okeechobee, FL 34974 (referred to below as "Grantor") and Community South Bank, whose address is 625 S. Gay Street, Suite 450, Knoxville, TN 37902 (referred to below as "Lender").

**ASSIGNMENT.**  For valuable consideration, Grantor hereby assigns, grants a continuing security interest in, and conveys to Lender all of Grantor's right, title, and interest in and to the Rents from the following described Property located in Okeechobee County, State of Florida:

See Exhibit "A", which is attached to this Assignment and made a part of this Assignment as if fully set forth herein.

The Property or its address is commonly known as 2200 Southeast Highway 441, Okeechobee, FL 34974.  The Property tax identification number is 1-35-37-35-0A00-00011-B000.

THIS ASSIGNMENT IS GIVEN TO SECURE  (1) PAYMENT OF THE INDEBTEDNESS AND  (2) PERFORMANCE OF ANY AND ALL OBLIGATIONS OF GRANTOR UNDER THE NOTE, THIS ASSIGNMENT, AND THE RELATED DOCUMENTS.

1

*D. l.*



**THIS ASSIGNMENT IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Assignment or any Related Documents, Grantor shall pay to Lender all amounts secured by this Assignment as they become due, and shall strictly perform all of Grantor's obligations under this Assignment. Unless and until Lender exercises its right to collect the Rents as provided below and so long as there is no default under this Assignment, Grantor may remain in possession and control of and operate and manage the Property and collect the Rents, provided that the granting of the right to collect the Rents shall not constitute Lender's consent to the use of cash collateral in a bankruptcy proceeding.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that:

**Ownership.** Grantor is entitled to receive the Rents free and clear of all rights, loans, liens, encumbrances, and claims except as disclosed to and accepted by Lender in writing.

**Right to Assign.** Grantor has the full right, power and authority to enter into this Assignment and to assign and convey the Rents to Lender.

**No Prior Assignment.** Grantor has not previously assigned or conveyed the Rents to any other person by any instrument now in force.

**No Further Transfer.** Grantor will not sell, assign, encumber, or otherwise dispose of any of Grantor's rights in the Rents except as provided in this Assignment.

**LENDER'S RIGHT TO RECEIVE AND COLLECT RENTS.** Lender shall have the right at any time, and even though no default shall have occurred under this Assignment, to collect and receive the Rents. For this purpose, Lender is hereby given and granted the following rights, powers and authority:

**Notice to Tenants.** Lender may send notices to any and all tenants of the Property advising them of this Assignment and directing all Rents to be paid directly to Lender or Lender's agent.

**Enter the Property.** Lender may enter upon and take possession of the Property; demand, collect and receive from the tenants or from any other persons liable therefor, all of the Rents; institute and carry on all legal proceedings necessary for the protection of the Property, including such proceedings as may be necessary to recover possession of the Property; collect the Rents and remove any tenant or tenants or other persons from the Property.

**Maintain the Property.** Lender may enter upon the Property to maintain the Property and keep the same in repair; to pay the costs thereof and of all services of all employees, including their equipment, and of all continuing costs and expenses of maintaining the Property in proper repair and condition, and also to pay all taxes, assessments and water utilities, and the premiums on fire and other insurance effected by Lender on the Property.

**Compliance with Laws.** Lender may do any and all things to execute and comply with the laws of the State of Florida and also all other laws, rules, orders, ordinances and requirements of all other governmental agencies affecting the Property.

**Lease the Property.** Lender may rent or lease the whole or any part of the Property for such term or terms and on such conditions as Lender may deem appropriate.

**Employ Agents.** Lender may engage such agent or agents as Lender may deem appropriate, either in Lender's name or in Grantor's name, to rent and manage the Property, including the collection and application of Rents.

**Other Acts.** Lender may do all such other things and acts with respect to the Property as Lender may deem appropriate and may act exclusively and solely in the place and stead of Grantor and to have all of the powers of Grantor for the purposes stated above.

**No Requirement to Act.** Lender shall not be required to do any of the foregoing acts or things, and the fact that Lender shall have performed one or more of the foregoing acts or things shall not require Lender to do any other specific act or thing.

**APPLICATION OF RENTS.** All costs and expenses incurred by Lender in connection with the Property shall be for Grantor's account and Lender may pay such costs and expenses from the Rents. Lender, in its sole discretion, shall determine the application of any and all Rents received by it; however, any such Rents received by Lender which are not applied to such costs and expenses shall be applied to the Indebtedness. All expenditures made by Lender under this Assignment and not reimbursed from the Rents shall become a part of the Indebtedness secured by this Assignment, and shall be payable on demand, with interest at the Note rate from date of expenditure until paid.

**FULL PERFORMANCE.** If Grantor pays all of the Indebtedness when due and otherwise performs all the obligations imposed upon Grantor under this Assignment, the Note, and the Related Documents, Lender shall execute and deliver to Grantor a suitable satisfaction of this Assignment and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Property. Any termination fee required by law shall be paid by Grantor, if permitted by applicable law.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Assignment or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Assignment or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Rents or the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become

2

D. P.




a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any Installment payments to become due during either (1) the term of any applicable Insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Assignment also will secure payment of these amounts. Such right shall be In addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Default will occur if payment in full is not made immediately when due.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon Default and at any time thereafter, Lender may exercise any one or more of the following rights and remedies, In addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty that Grantor would be required to pay.

**Collect Rents.** Lender shall have the right, without notice to Grantor, to take possession of the Property and collect the Rents, Including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender shall have all the rights provided for in the Lender's Right to Receive and Collect Rents Section, above. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-In-fact to endorse instruments received in payment thereof In the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either In person, by agent, or through a receiver.

**Appoint Receiver.** In the event of a suit being instituted to foreclose this Assignment, Lender shall be entitled to apply at any time pending such foreclosure suit to the court having jurisdiction thereof for the appointment of a receiver of any or all of the Property, and of all rents, incomes, profits, issues and revenues thereof, from whatsoever source. The parties agree that the court shall forthwith appoint such receiver with the usual powers and duties of receivers in like cases. Such appointment shall be made by the court as a matter of strict right to Lender and without notice to Grantor, and without reference to the adequacy or inadequacy of the value of the Property, or to Grantor's solvency or any other party defendant to such suit. Grantor hereby specifically waives the right to object to the appointment of a receiver and agrees that such appointment shall be made as an admitted equity and as a matter of absolute right to Lender, and consents to the appointment of any officer or employee of Lender as receiver. Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Assignment or the Note or by law.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Assignment, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise Its remedies.

**Attorneys' Fees; Expenses.** If Lender Institutes any suit or action to enforce any of the terms of this Assignment, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action Is Involved, and to the extent not prohibited by law, all reasonable expenses Lender Incurs that in Lender's opinion are necessary at any time for the protection of its Interest or the enforcement of Its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title Insurance, and fees for the Trustee, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**STATEMENT OF NON-HOMESTEAD.** Grantor on behalf of herself/himself and each and every person claiming by, through or under grantor, hereby grants this Mortgage, free from all rights and benefits under and by virtue of the homestead exemption laws. Grantor hereby releases and waives all rights under and by virtue of the homestead exemption law of this state.

**EXHIBIT "A".** An exhibit, titled "Exhibit "A"," is attached to this Assignment and by this reference is made a part of this Assignment just as if all the provisions, terms and conditions of the Exhibit had been fully set forth in this Assignment.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Assignment:

**Amendments.** This Assignment, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Assignment. No alteration of or amendment to this Assignment shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Caption Headings.** Caption headings In this Assignment are for convenience purposes only and are not to be used to interpret or define the provisions of this Assignment.

**Governing Law.** With respect to procedural matters related to the perfection and enforcement of Lender's rights

3

D. P.

against the Property, this Assignment will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the State of Florida. In all other respects, this Assignment will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Tennessee without regard to its conflicts of law provisions. However, if there ever is a question about whether any provision of this Assignment is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Note and this Assignment has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of Tennessee.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Knox County, State of Tennessee.

**Merger.** There shall be no merger of the interest or estate created by this assignment with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Interpretation.** (1) In all cases where there is more than one Borrower or Grantor, then all words used in this Assignment in the singular shall be deemed to have been used in the plural where the context and construction so require. (2) If more than one person signs this Assignment as "Grantor," the obligations of each Grantor are joint and several. This means that if Lender brings a lawsuit, Lender may sue any one or more of the Grantors. If Borrower and Grantor are not the same person, Lender need not sue Borrower first, and that Borrower need not be joined in any lawsuit. (3) The names given to paragraphs or sections in this Assignment are for convenience purposes only. They are not to be used to interpret or define the provisions of this Assignment.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Assignment unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Assignment shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Assignment. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Assignment, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Assignment shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Assignment. Any party may change its address for notices under this Assignment by giving written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Powers of Attorney.** The various agencies and powers of attorney conveyed on Lender under this Assignment are granted for purposes of security and may not be revoked by Grantor until such time as the same are renounced by Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Assignment to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Assignment. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Assignment shall not affect the legality, validity or enforceability of any other provision of this Assignment.

**Successors and Assigns.** Subject to any limitations stated in this Assignment on transfer of Grantor's interest, this Assignment shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Assignment and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Assignment or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Assignment.

**Waive Jury.** All parties to this Assignment hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**Waiver of Right of Redemption.** NOTWITHSTANDING ANY OF THE PROVISIONS TO THE CONTRARY CONTAINED IN THIS ASSIGNMENT, GRANTOR HEREBY WAIVES ANY AND ALL RIGHTS OF REDEMPTION FROM SALE UNDER ANY ORDER OR JUDGMENT OF FORECLOSURE ON GRANTOR'S BEHALF AND ON BEHALF OF EACH AND EVERY PERSON, EXCEPT JUDGMENT CREDITORS OF GRANTOR, ACQUIRING ANY INTEREST IN OR TITLE TO THE PROPERTY SUBSEQUENT TO THE DATE OF THIS ASSIGNMENT.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Assignment. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Assignment shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Assignment.** The word "Assignment" means this ASSIGNMENT OF RENTS, as this ASSIGNMENT OF RENTS may be

4

D. P.

 

amended or modified from time to time, together with all exhibits and schedules attached to this ASSIGNMENT OF RENTS from time to time.

**Borrower.** The word "Borrower" means Brentwood Okeechobee, LLC.

**Default.** The word "Default" means the Default set forth in this Assignment in the section titled "Default".

**Grantor.** The word "Grantor" means Brentwood Okeechobee, LLC.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Assignment, together with interest on such amounts as provided in this Assignment.

**Lender.** The word "Lender" means Community South Bank, its successors and assigns.

**Note.** The word "Note" means the promissory note dated December 28th, 2007, **in the original principal amount of $2,231,500.00** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Assignment" section of this Assignment.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all of Grantor's present and future rights, title and interest in, to and under any and all present and future leases, including, without limitation, all rents, revenue, income, issues, royalties, bonuses, accounts receivable, cash or security deposits, advance rentals, profits and proceeds from the Property, and other payments and benefits derived or to be derived from such leases of every kind and nature, whether due now or later, including without limitation Grantor's right to enforce such leases and to receive and collect payment and proceeds thereunder.

D. P.

THE UNDERSIGNED ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS ASSIGNMENT, AND NOT PERSONALLY BUT AS AN AUTHORIZED SIGNER, HAS CAUSED THIS ASSIGNMENT TO BE SIGNED AND EXECUTED ON BEHALF OF GRANTOR ON DECEMBER 28 , 2007.

GRANTOR:

BRENTWOOD OKEECHOBEE, LLC

By: _____
Dharmesh Patel, Authorized Member of Brentwood Okeechobee, LLC

WITNESSES:

X _____

_____

## LIMITED LIABILITY COMPANY ACKNOWLEDGMENT

STATE OF Florida                            )
                                                           ) SS
COUNTY OF Palm Beach                  )

The foregoing instrument was acknowledged before me this 28th day of December, 2007 by Dharmesh Patel, Authorized Member of Brentwood Okeechobee, LLC on behalf of Brentwood Okeechobee, LLC, a limited liability company. They are personally known to me or have produced Driver licence as identification.

_____
(Signature of Person Taking Acknowledgment)

Suzette Wells
_____
(Name of Acknowledger Typed, Printed or Stamped)

_____
(Title or Rank)

_____
(Serial Number, if any)

J. SUZETTE WELLS
MY COMMISSION # DD 593279
EXPIRES: November 5, 2010
Bonded Thru Budget Notary Services

6

D. P.



## EXHIBIT "A"
### (Legal Description)

Parcel I

A portion of Section 35, Township 37 South, Range 35 East and a Portion of the land lying South of said Section 35 between the Hancock Meander Line and the 17 foot contour line of Lake Okeechobee, and a portion of permanently reclaimed Lake Bottom land in Section 35 and/or South of said Section 35, more particularly described as follows:

Beginning at a point on the East line of the NW 1/4 of said Section 35, where it intersects the South right-of-way line of Conner's Highway (also known as U.S. Highway 441 and Florida State Road 15); thence Southwesterly along a curve to the left in said right-of-way, said curve having a radius of 6306.26 feet and a central angle of 2°00'47", an arc distance of 221.57 feet to the point of tangency; thence bear South 67°36'50" West, along said right-of-way, a distance of 28.43 feet to the POINT OF BEGINNING; thence continue along the aforedescribed line, a distance of 150.00 feet; thence bear South 0°55'52" West, a distance of 875.11 feet to the North right-of-way line of Levee LD-4; thence North 74°35'42" East along said right-of-way a distance of 150.00 feet; thence bear North 0°31'58" East a distance of 892.32 feet, more of less to the POINT OF BEGINNING.

Lying in and comprising a part of Section 35, Township 37 South, Range 35 East, Okeechobee County, Florida.

Parcel II

Commencing at a point on the East Boundary line of the NW 1/4 of Section 35, Township 37 South, Range 35 East, where it intersects the Southerly right-of-way line of S. R. 15 (U.S. 441) thence run South 0°00'28" East, along an extension of the East Boundary line of said NW 1/4, for a distance of 916.72 feet to a point on the Northerly right-of-way line of LD-4 of the central and Southern Florida Flood Control District, thence run South 74°35'42" West along the Northerly right-of-way line of said LD-4 for a distance of 400.00 feet for POINT OF BEGINNING.  Thence continue South 74°35'42" West along said right-of-way line of LD-4 for a distance of 298.40 feet; thence run North 0°56'35" East a distance of 864.66 feet to a point on the Southerly right-of-way line of the aforesaid S. R. 15 (U.S. 441); thence run North 67°36'50" East, along the Southerly right-of-way line of said S.R. 15 (U.S. 441), for a distance of 278.43 feet, thence continuing along the Southerly right-of-way line of said S.R. 15 (U.S. 441) run South 22°23'10" East for a distance of 27.00 feet, thence run North 67°36'50" East for a distance of 21.57 feet, thence run South 0°55'52" West for a distance of 874.98 feet to POINT OF BEGINNING.

Lying in and comprising a part of Section 35, Township 37 South, Range 35 East, Okeechobee County, Florida.

Property Address:   2200 Southeast Highway 441, Okeechobee, Florida 34974.

7

D. P.

# EXHIBIT "C"



# COMMERCIAL SECURITY AGREEMENT

| Principal | Loan Date | Loan No | Officer |
|-----------|-----------|---------|---------|
| $2,231,500.00 | 12-28-2007 | 7878 | DC |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

Any item above containing "***" has been omitted due to text length limitations.

**Grantor:** Brentwood Okeechobee, LLC
2200 Southeast Highway 441
Okeechobee, FL 34974

**Lender:** Community South Bank
626 S. Gay Street, Suite 450
Knoxville, TN 37902

THIS COMMERCIAL SECURITY AGREEMENT dated December 28th, 2007, is made and executed between Brentwood Okeechobee, LLC ("Grantor") and Community South Bank ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other minerals and accounts constituting as-extracted collateral; all fixtures; all timber to be cut; all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property.

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A) All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

*Some or all of the Collateral may be located on the following described real estate:*

as shown on the exhibit named "Exhibit "A"", attached hereto and incorporated herein by this reference

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender.

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the

1

P.Q.

 

management or in the members or managers of the limited liability company Grantor, (4) change in the authorized signer(s), (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity, or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its membership agreement does not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. At the time any account becomes subject to a security interest in favor of Lender, the account shall be a good and valid account representing an undisputed, bona fide indebtedness incurred by the account debtor, for merchandise held subject to delivery instructions or previously shipped or delivered pursuant to a contract of sale, or for services previously performed by Grantor with or for the account debtor. So long as this Agreement remains in effect, Grantor shall not, without Lender's prior written consent, compromise, settle, adjust, or extend payment under or with regard to any such Accounts. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral (or to the extent the Collateral consists of intangible property such as accounts or general intangibles, the records concerning the Collateral) at Grantor's address shown above or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following (1) all real property Grantor owns or is purchasing, (2) all real property Grantor is renting or leasing, (3) all storage facilities Grantor owns, rents, leases, or uses, and (4) all other properties where Collateral is or may be located.

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, including the sales of inventory, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of Florida, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. While Grantor is not in default under this Agreement, Grantor may sell inventory, but only in the ordinary course of its business and only to buyers who qualify as a buyer in the ordinary course of business. A sale in the ordinary course of Grantor's business does not include a transfer in partial or total satisfaction of a debt or any bulk sale. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, reasonable attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for

2

D. P.

 

indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. This includes making sure Lender is shown as the first and only security interest holder on the title covering the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. If Grantor changes Grantor's name or address, or the name or address of any person granting a security interest under this Agreement changes, Grantor will promptly notify the Lender of such change.

**GRANTOR'S RIGHT TO POSSESSION AND TO COLLECT ACCOUNTS.** Until default and except as otherwise provided below with respect to accounts, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. Until otherwise notified by Lender, Grantor may collect any of the Collateral consisting of accounts. At any time and even though no Default exists, Lender may exercise its rights to collect the accounts and to notify account debtors to make payments directly to Lender for application to the Indebtedness. If Lender at any time has possession of any Collateral, whether before or after Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**DEFAULT.** Default will occur if payment in full is not made immediately when due.

**RIGHTS AND REMEDIES ON DEFAULT.** If Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Florida Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies.

3

D. P.

 

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.

**Appoint Receiver.** In the event of a suit being instituted to foreclose this Agreement, Lender shall be entitled to apply at any time pending such foreclosure suit to the court having jurisdiction thereof for the appointment of a receiver of any or all of the Collateral, and of all rents, incomes, profits, issues and revenues thereof, from whatsoever source. The parties agree that the court shall forthwith appoint such receiver with the usual powers and duties of receivers in like cases. Such appointment shall be made by the court as a matter of strict right to Lender and without notice to Grantor, and without reference to the adequacy or inadequacy of the value of the Collateral, or to Grantor's solvency or any other party defendant to such suit. Grantor hereby specifically waives the right to object to the appointment of a receiver and agrees that such appointment shall be made as an admitted equity and as a matter of absolute right to Lender, and consents to the appointment of any officer or employee of Lender as receiver. Lender shall have the right to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the Rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor, change any address to which mail and payments are to be sent, and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**EXHIBIT "A".** An exhibit, titled "Exhibit "A"," is attached to this Agreement and by this reference is made a part of this Agreement just as if all the provisions, terms and conditions of the Exhibit had been fully set forth in this Agreement

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including reasonable attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** With respect to procedural matters related to the perfection and enforcement of Lender's rights against the Collateral, this

D. P.



Agreement will be governed by federal law applicable to Lender and to the extent not preempted by federal law, the laws of the State of Florida. In all other respects, this Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Tennessee without regard to its conflicts of law provisions. However, if there ever is a question about whether any provision of this Agreement is valid or enforceable, the provision that is questioned will be governed by whichever state or federal law would find the provision to be valid and enforceable. The loan transaction that is evidenced by the Note and this Agreement has been applied for, considered, approved and made, and all necessary loan documents have been accepted by Lender in the State of Tennessee.

**Choice of Venue.** If there is a lawsuit, Grantor agrees upon Lender's request to submit to the jurisdiction of the courts of Knox County, State of Tennessee.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury.** All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code.

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means Brentwood Okeechobee, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Default.** The word "Default" means the Default set forth in this Agreement in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., the Hazardous Waste Management Substances Act of 1998, T.C.A., 68-212-201, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means Brentwood Okeechobee, LLC.

D.P.

 

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents

**Lender.** The word "Lender" means Community South Bank, its successors and assigns

**Note.** The word "Note" means the Note executed by Brentwood Okeechobee, LLC in the principal amount of $2,231,500.00 dated December 2007, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED DECEMBER _18_ , 2007.

GRANTOR:

BRENTWOOD OKEECHOBEE, LLC

By: _____
Dharmesh Patel, Authorized Member of Brentwood Okeechobee, LLC

6

D. P.

 

**EXHIBIT "A"**
(Legal Description)

Parcel I

A portion of Section 35, Township 37 South, Range 35 East and a Portion of the land lying South of said Section 35 between the Hancock Meander Line and the 17 foot contour line of Lake Okeechobee, and a portion of permanently reclaimed Lake Bottom land in Section 35 and/or South of said Section 35, more particularly described as follows:

Beginning at a point on the East line of the NW 1/4 of said Section 35, where it intersects the South right-of-way line of Conner's Highway (also known as U.S. Highway 441 and Florida State Road 15); thence Southwesterly along a curve to the left in said right-of-way, said curve having a radius of 6306.26 feet and a central angle of 2°00'47", an arc distance of 221.57 feet to the point of tangency; thence bear South 67°36'50" West, along said right-of-way, a distance of 28.43 feet to the POINT OF BEGINNING; thence continue along the aforedescribed line, a distance of 150.00 feet; thence bear South 0°55'52" West, a distance of 875.11 feet to the North right-of-way line of Levee LD-4; thence North 74°35'42" East along said right-of-way a distance of 150.00 feet; thence bear North 0°31'58" East a distance of 892.32 feet, more of less to the POINT OF BEGINNING.

Lying in and comprising a part of Section 35, Township 37 South, Range 35 East, Okeechobee County, Florida.

Parcel II

Commencing at a point on the East Boundary line of the NW 1/4 of Section 35, Township 37 South, Range 35 East, where it intersects the Southerly right-of-way line of S. R. 15 (U.S. 441) thence run South 0°00'28" East, along an extension of the East Boundary line of said NW 1/4, for a distance of 916.72 feet to a point on the Northerly right-of-way line of LD-4 of the central and Southern Florida Flood Control District, thence run South 74°35'42" West along the Northerly right-of-way line of said LD-4 for a distance of 400.00 feet for POINT OF BEGINNING. Thence continue South 74°35'42" West along said right-of-way line of LD-4 for a distance of 298.40 feet; thence run North 0°56'35" East a distance of 864.66 feet to a point on the Southerly right-of-way line of the aforesaid S. R. 15 (U.S. 441); thence run North 67°36'50" East, along the Southerly right-of-way line of said S.R. 15 (U.S. 441), for a distance of 278.43 feet, thence continuing along the Southerly right-of-way line of said S.R. 15 (U.S. 441) run South 22°23'10" East for a distance of 27.00 feet, thence run North 67°36'50" East for a distance of 21.57 feet, thence run South 0°55'52" West for a distance of 874.98 feet to POINT OF BEGINNING.

Lying in and comprising a part of Section 35, Township 37 South, Range 35 East, Okeechobee County, Florida.

Property Address:  2200 Southeast Highway 441, Okeechobee, Florida 34974.

# EXHIBIT "D"

# STATE OF FLORIDA UNIFORM COMMERCIAL CODE FINANCING STATEMENT FORM

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**

CSC Diligenz, Inc.    1-800-858-5294

**B. SEND ACKNOWLEDGEMENT TO:**

Name    30664133

Address    CSC Diligenz, Inc.
6500 Harbour Heights Pkwy, Suite 400

Address    Mukilteo, WA 98275

City/State/Zip

**FLORIDA SECURED TRANSACTION REGISTRY**

# FILED

2007 Dec 03 AM 12:00

****** 200707136138 ******

THE /

---

**1. DEBTOR'S EXACT FULL LEGAL NAME – INSERT ONLY ONE DEBTOR NAME (1a OR 1b) – Do Not Abbreviate or Combine Names**

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| Brentwood Okeechobee, LLC | | | | | |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 2200 S.E. Highway 441 | Okeechobee | FL | 34974 | USA |

| 1d. TAX ID# | REQUIRED ADD'L INFO RE: ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID# |
|---|---|---|---|---|
| | | LLC | FL | L07000112772  ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME – INSERT ONLY ONE DEBTOR NAME (2a OR 2b) – Do Not Abbreviate or Combine Names**

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| | | | | | |

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. TAX ID# | REQUIRED ADD'L INFO RE: ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID# |
|---|---|---|---|---|
| | | | | ☐ NONE |

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) – INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)**

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Community South Bank | | | | |

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 625 S. Gay Street, Suite 450 | Knoxville | TN | 37902 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

All Goods, Equipment, Furniture, Fixtures, Inventory, Accounts, Accounts Receivable, Chattel Paper and General Intangibles (including any proceeds and products), whether now owned or hereinafter acquired; said items primarily are located at 2200 S.E. Highway 441, Okeechobee, FL 34974, or wherever same may be located. This financing statement is filed in relation to a Note in the principal amount of $2,231,500.00, the documentary stamp tax having been paid on the Mortgage filed in the real estate records of Okeechobee County, Florida, pursuant to s. 201.22 F.S.

---

| 5. ALTERNATE DESIGNATION (if applicable) | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR |
|---|---|---|---|
| | AG. LIEN | NON-UCC FILING | SELLER/BUYER |

**6. Florida DOCUMENTARY STAMP TAX – YOU ARE REQUIRED TO CHECK EXACTLY ONE BOX**

☑ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.

☐ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA** CSB Loan No. 7878

STANDARD FORM - FORM UCC-1 (REV.12/2001)          Filing Office Copy          Approved by the Secretary of State, State of Florida

*//*

STATE OF FLORIDA UNIFORM COMMERCIAL CODE
FINANCING STATEMENT FORM

FLORIDA SECURED TRANSACTION REGISTRY

# FILED
## 2007 Dec 03 AM 12:00
**** 200707136138 ****
***D * 20010000A0-25.00***25.00***

**A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON**
CSC Diligenz, Inc.   1-800-858-5294

**B. SEND ACKNOWLEDGEMENT TO:**

Name          30684133

Address   CSC Diligenz, Inc.
          6500 Harbour Heights Pkwy, Suite 400
Address   Mukilteo, WA 98275

City/State/Zip

THE /

---

**1. DEBTOR'S EXACT FULL LEGAL NAME – INSERT ONLY ONE DEBTOR NAME (1a OR 1b) – Do Not Abbreviate or Combine Names**

| 1a. ORGANIZATION'S NAME   Brentwood Okeechobee, LLC | | | | |
|---|---|---|---|---|
| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

| 1c. MAILING ADDRESS   2200 S.E. Highway 441 | | CITY   Okeechobee | STATE   FL | POSTAL CODE   34974 | COUNTRY   USA |
|---|---|---|---|---|---|

| 1d. TAX ID# | REQUIRED ADD'L INFO RE: ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION   LLC | 1f. JURISDICTION OF ORGANIZATION   FL | 1g. ORGANIZATIONAL ID#   L07000112772   ☐ NONE |
|---|---|---|---|---|

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME – INSERT ONLY ONE DEBTOR NAME (2a OR 2b) – Do Not Abbreviate or Combine Names**

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

| 2c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|---|

| 2d. TAX ID# | REQUIRED ADD'L INFO RE: ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID#   ☐ NONE |
|---|---|---|---|---|

**3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) – INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)**

| 3a. ORGANIZATION'S NAME   Community South Bank | | | | |
|---|---|---|---|---|
| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | | SUFFIX |

| 3c. MAILING ADDRESS   625 S. Gay Street, Suite 450 | | CITY   Knoxville | STATE   TN | POSTAL CODE   37902 | COUNTRY   USA |
|---|---|---|---|---|---|

**4. This FINANCING STATEMENT covers the following collateral:**
All Goods, Equipment, Furniture, Fixtures, Inventory, Accounts, Accounts Receivable, Chattel Paper and General Intangibles (including any proceeds and products), whether now owned or hereinafter acquired; said items primarily are located at 2200 S.E. Highway 441, Okeechobee, FL 34974, or wherever same may be located. This financing statement is filed in relation to a Note in the principal amount of $2,231,500.00, the documentary stamp tax having been paid on the Mortgage filed in the real estate records of Okeechobee County, Florida, pursuant to s. 201.22 F.S.

| 5. ALTERNATE DESIGNATION (if applicable) | LESSEE/LESSOR | CONSIGNEE/CONSIGNOR | BAILEE/BAILOR |
|---|---|---|---|
| | AG. LIEN | NON-UCC FILING | SELLER/BUYER |

**6. Florida DOCUMENTARY STAMP TAX – YOU ARE REQUIRED TO CHECK EXACTLY ONE BOX**

☑ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.

☐ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA** CSB Loan No. 7878

STANDARD FORM - FORM UCC-1 (REV.12/2001)          Filing Office Copy          Approved by the Secretary of State, State of Florida

# EXHIBIT "E"

IN THE CIRCUIT COURT OF THE 19TH JUDICIAL CIRCUIT IN AND FOR OKEECHOBEE COUNTY, FLORIDA

COMMUNITY SOUTH BANK,

CASE NO.: 2009 CA 731

    Plaintiff,

vs.

BRENTWOOD OKEECHOBEE, LLC, a Florida limited liability company; DHARMESH PATEL; SUKETU PATEL; THE UNITED STATES OF AMERICA, on behalf of the United States Small Business Administration; TENANT #1 and TENANT #2, the names being fictitious as to account for parties in possession,

    Defendants.

_____/

## SUMMARY FINAL JUDGMENT OF FORECLOSURE

THIS ACTION was heard before the Court on June 10, 2010 at 11:30 a.m. upon the Plaintiff's Motion for Summary Final Judgment of Foreclosure as to Counts II and III of the Complaint (Foreclosure of Mortgage with respect to real property known as 2200 S.E. Highway 441, Okeechobee, FL 34974 and Foreclosure of Security Interests in Personalty and Additional Collateral) against Defendants, Brentwood Okeechobee, LLC, a Florida limited liability company, Dharmesh Patel, Suketu Patel, Tenant #1 n/k/a Jack Jaskot, Tenant #2 n/k/a Anetta Jaskot, The United States of America, on behalf of the United States Small Business Administration (hereinafter sometimes referred to collectively as "Defendants").

FILED IN OPEN COURT THIS THE
___ DAY OF _____, 20 ___
SHARON ROBERTSON, CLERK
OKEECHOBEE COUNTY, FLORIDA
BY _____
    Deputy Clerk

On the evidence presented, and the Court, having reviewed the Motion for Summary Final Judgment of Foreclosure as to Count II and Count III of the Complaint (Foreclosure of Mortgage with respect to real property located at 2200 S.E. Highway 441, Okeechobee, FL 34974 and Foreclosure of Security Interests in Personalty and Additional Collateral), Affidavits of Claim, Attorneys' Fees and Costs, the original Note i/a/o $2,231,500.00 and the original Mortgage, copies of which are annexed to the Affidavit of Claim as Exhibits A and B, respectively, having heard oral argument, taking note of the notice provided for the hearing, and being otherwise advised in the premises, it is hereby,

ORDERED and ADJUDGED that:

1.    The Plaintiff's Motion for Summary Final Judgment of Foreclosure as to Count II and Count III of the Complaint (Foreclosure of Mortgage with respect to real property located at 2200 S.E. Highway 441, Okeechobee, FL 34974 and Foreclosure of Security Interests in Personalty and Additional Collateral) is GRANTED and the defaults previously entered by the Clerk of Court against all Defendants to this proceeding, except the United States of America on behalf of the United States Small Business Administration which filed an Answer, are hereby ratified and reaffirmed. Service of process has been duly and regularly obtained over each of the Defendants to this lawsuit.

2.    There is due and owing to the Plaintiff, Community South Bank, from Defendants, Brentwood Okeechobee, LLC, a Florida limited liability company, Dharmesh Patel, and Suketu Patel, jointly and severally, the following on the business loan owned by Community South Bank, in the original principal amount of $2,231,500.00 at issue in the foreclosure Complaint:

Principal Balance:                                              $2,199,474.56 ✓

Interest through 6-10-10:                                  $    174,374.18

~~Pre-acceleration Late Charges~~                     $    ~~3,475.48~~

SUBTOTAL as of 6-10-10 (exclusive of fees and costs): $ ~~2,377,324.22~~

Attorneys' Fees thru 1-25-10: *Reserved if the Plaintiff*     $   ~~2,463.50~~ ✓
*Can 'show the 3rd party affidavit was served*
Costs (per Affidavit of Costs) *more than 20 days*            $    2,688.50 ✓
*prior to the hearing*                                        *2,376,537.24*
TOTAL SUM                                                     $ ~~2,382,476.22~~

Interest shall accrue on the Total Sum and all additional sums awarded for attorneys' fees and costs at the prevailing legal rate of interest (currently 6% per annum).

3.      Plaintiff, Community South Bank, whose address is 625 South Gay Street, Suite 450, Knoxville, Tennessee 37902, holds a **first** lien for the TOTAL SUM of **$2,382,476.22, plus statutory interest (together with any attorneys' fees, costs and other amounts subsequently awarded and increasing the TOTAL SUM).** The lien of the Plaintiff is superior in dignity to any right, title, interest or claim of the Defendants, Defendants, Brentwood Okeechobee, LLC, a Florida limited liability company, Dharmesh Patel, Suketu Patel, Tenant #1 n/k/a Jack Jaskot, Tenant #2 n/k/a Anetta Jaskot, The United States of America, on behalf of the United States Small Business Administration, and all persons, corporations, or other entities claiming by, through, or under the Defendants or any of them and the property will be sold free and clear of all claims of the Defendants, with the exception of the United States' right of redemption under 28 U.S.C. §2410(c).

4.      The Plaintiff's lien encumbers the subject property located in Okeechobee County, Florida and described as:

SEE EXHIBIT "A" ATTACHED HERETO

TOGETHER WITH all inventory, equipment, furnishings, accounts, accounts receivables (including but not limited to all health-care-insurance receivables), deposits, deposit accounts, and all other personal property of Brentwood Okeechobee, LLC, a Florida limited liability company located in or used in connection with the above-referenced property and all buildings, structures, additions or other improvements thereupon.

5.     If the TOTAL SUM (together with any attorneys' fees and costs awarded to increase the Total Sum) with interest at the rate described in ¶ 2 and all costs accrued subsequent to this judgment are not paid, the Clerk of the Court shall sell the subject property at public sale on _Avgst 18_ , 2010, at 11:00 a.m. to the highest bidder for cash at 312 North West 3rd Street - Suite 101, Okeechobee, FL 34972 after having first given notice as required by Section 45.031, Florida Statutes. ~~The clerk shall not conduct the sale in the absence of the Plaintiff or its representative.~~

6.     As to the Defendant, United States of America on behalf of the United States Small Business Administration ("U.S. Small Business Administration"), if the U.S. Small Business Administration is the successful bidder at the foreclosure sale, said Defendant shall have 30 days from the date of the sale to deliver a Treasury check in payment of the amount of its cash bid, and the deposit required by Florida Statute §45.031(2) will be waived.

7.     Plaintiff shall advance all subsequent costs of this action and shall be reimbursed for them by the Clerk if Plaintiff is not the purchaser of the property for sale. If Plaintiff is the purchaser, the Clerk shall credit Plaintiff's bid with the TOTAL SUM referenced at ¶ 2, together with interest and costs accruing subsequent to this judgment, or such part of it, as is necessary to pay the bid in full. The Clerk shall receive the service

charge imposed in Section 45.031, Florida Statutes, for services in making, recording, and certifying the sale and title that shall be assessed as costs.

8.      On filing of the Certificate of Sale, each of the Defendant's right of redemption as proscribed by Florida Statutes, Section 45.0315 shall be terminated, except for the one (1) year right of redemption as to the U.S. Small Business Administration.

9.      On filing the Certificate of Title, the Clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying: first, all of the Plaintiff's costs; second, documentary stamps affixed to the Certificate of Title; third, Plaintiff's attorneys' fees; fourth, the TOTAL SUM due to the Plaintiff, less the items paid, plus interest at the rate prescribed in ¶ 2 from this date to the date of the sale. Thereafter, the Clerk shall hold any surplus pending further Order of this Court. The U.S. Small Business Administration shall not be bound by the sixty (60) day time period imposed by Florida Statute Section 45.032 as to any motions for distribution of surplus proceeds.

10.     Upon filing of the Certificate of Title, the Defendants, Brentwood Okeechobee, LLC, a Florida limited liability company, Dharmesh Patel, Suketu Patel, Tenant #1 n/k/a Jack Jaskot, Tenant #2 n/k/a Anetta Jaskot, and all persons claiming under or against the Defendants since the filing of the Notice of Lis Pendens shall be foreclosed of all estate or claim in the property and the purchaser at sale shall be let into possession of the property.

11.     Pursuant to 28 U.S.C. § 2410(c), the U.S. Small Business Administration, shall have a one year right of redemption from the date of sale. Accordingly, upon the filing of the Certificate of Sale, with the exception of the U.S. Small Business

Administration's one year right of redemption, all Defendants' rights of redemption as proscribed by Florida Statutes, Section 45.0315 shall be terminated.

12.   <u>NOTICE PURSUANT TO AMENDMENT TO SECTION, 45.031, FLA. ST.</u>

IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THE FINAL JUDGMENT.

IF YOU ARE A SUBORDINATE LIENHOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN SIXTY (60) DAYS AFTER THE SALE. IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.

IF YOU ARE THE PROPERTY OWNER, YOU MAY CLAIM THESE FUNDS YOURSELF. YOU ARE NOT REQUIRED TO HAVE A LAWYER OR ANY OTHER REPRESENTATION AND DO NOT HAVE TO ASSIGN YOUR RIGHTS TO ANYONE ELSE IN ORDER FOR YOU TO CLAIM ANY MONEY TO WHICH YOU ARE ENTITLED. PLEASE CHECK WITH THE CLERK OF THE COURT, 312 North WEST 3RD STREET, OKEECHOBEE, FLORIDA 34972   (TELEPHONE: (863) 763-2131), WITHIN (10) DAYS AFTER THE SALE TO SEE IF THERE IS ADDITIONAL MONEY FROM THE FORECLOSURE SALE THAT THE CLERK HAS IN THE REGISTRY OF THE COURT.

IF YOU DECIDE TO SELL YOUR HOME OR HIRE SOMEONE TO HELP YOU CLAIM THE ADDITIONAL MONEY, YOU SHOULD READ VERY

CAREFULLY ALL PAPERS YOU ARE REQUIRED TO SIGN, ASK SOMEONE ELSE, PREFERABLY AN ATTORNEY WHO IS NOT RELATED TO THE PERSON OFFERING TO HELP YOU, TO MAKE SURE THAT YOU UNDERSTAND WHAT YOU ARE SIGNING AND THAT YOU ARE NOT TRANSFERRING YOUR PROPERTY OR THE EQUITY IN YOUR PROPERTY WITHOUT THE PROPER INFORMATION. IF YOU CANNOT AFFORD TO PAY AN ATTORNEY YOU MAY CONTACT THE FLORIDA RURAL LEGAL SERVICES, 200 SOUTH INDIAN RIVER DRIVE, FT. PIERCE, FLORIDA 34950, (772) 466-4766 TO SEE IF YOU QUALIFY FINANCIALLY FOR THEIR SERVICES. IF THEY CANNOT ASSIST YOU, THEY MAY BE ABLE TO REFER YOU TO A LOCAL BAR REFERRAL AGENCY OR SUGGEST OTHER OPTIONS. IF YOU CHOOSE TO CONTACT FLORIDA RURAL LEGAL SERVICES, 200 SOUTH INDIAN RIVER DRIVE, FT. PIERCE, FLORIDA 34950, (772) 466-4766, YOU SHOULD DO SO AS SOON AS POSSIBLE AFTER RECEIPT OF THIS NOTICE.

13.    Any purchaser other than the Plaintiff shall also pay all service charges assessed by the Clerk of the Circuit Court pursuant to Florida Statues (including §28.24), together with the amount necessary for proper documentary stamps to be affixed to the Certificate of Title and other Court charges.

14.    If the Plaintiff or its counsel has advanced or is required to advance any additional monies to protect the Plaintiff's mortgage lien or the Plaintiff opts to have its fees and costs included to increase the TOTAL SUM, then the Plaintiff or its attorneys may so certify to the Clerk of this Court via Affidavit(s) and the amount found due to the Plaintiff shall be increased by the amount of such advances and/or additional fees and

costs upon further motion and order of the Court. However, Plaintiff (at its option) may file separate motion papers seeking fees and costs at any time through thirty (30) days following entry of any deficiency final judgment or final order as to all remaining Counts of the Complaint herein, or obtain a final order in any separately filed proceedings as to the Note and guaranty documents at issue herein.

15.     In the event the Plaintiff is the purchaser at the sale, and the Defendants, Brentwood Okeechobee, LLC, a Florida limited liability company, Dharmesh Patel, Suketu Patel, Tenant #1 n/k/a Jack Jaskot, Tenant #2 n/k/a Anetta Jaskot, The United States of America, on behalf of the United States Small Business Administration and/or any and all persons, firms and/or corporations claiming by, through, under or against any of them fail to vacate the premises within ten (10) days following the date of the issuance of the Certificate of Title, the Clerk of the Court is directed to issue a Writ of Possession to the Plaintiff, its heirs, representatives, successors, or assigns, without the necessity of any further order from this Court as to the above-described property.

16.     This Court also reserves jurisdiction to enter additional Orders and Judgments, as appropriate, as to the foreclosure Complaint, as to the taxing of fees and costs in the Plaintiff's favor, and in order to join additional party defendants and permit filing of supplemental and/or amended pleadings as to additional defendants and/or claims, and foreclose as against any and all junior lienors, parties in possession, or other claimants (or potential claimants) and claims that may not have been effectively eliminated by the original Counts for foreclosure and enter Orders permitting the filing of amended and/or supplemental pleadings and proceedings (including the joinder of additional parties).

17.    This Court retains jurisdiction of this action to enter further orders that are proper, including without limitation, orders pertaining to the foreclosure Complaint, writs of possession and deficiency judgment(s).

DONE    AND    ORDERED    at    Okeechobee    County,    Florida,    on _____, 2010.



_____
CIRCUIT    COURT    JUDGE

Copies furnished to:

Dora F. Kaufman, Esq., Liebler, Gonzalez & Portuondo, P.A., 44 West Flagler Street, 25th Floor, Miami, Florida 33130

Brentwood Okeechobee, LLC, 2200 US Highway 441 SE, Okeechobee, Florida 34974

Dharmesh Patel, 2216 Widener Terrace, Wellington, Florida 33414

Suketu Patel, 2771 Pillsbury Way, Wellington, Florida 33414

Tenant #1 n/k/a Jack Jaskot and Tenant #2 n/k/a Annetta Jaskot, 2200 Southeast Highway 441 SE, Okeechobee, Florida 34974

Anthony G. Parham, Esq., Special AUSP, U.S. Small Business Administration, 13221 Woodland Park Road, Suite 500, Herndon, VA 20171



**EXHIBIT "A"**
(Legal Description)

Parcel I

A portion of Section 35, Township 37 South, Range 35 East and a Portion of the land lying South of said Section 35 between the Hancock Meander Line and the 17 foot contour line of Lake Okeechobee, and a portion of permanently reclaimed Lake Bottom land in Section 35 and/or South of said Section 35, more particularly described as follows:

Beginning at a point on the East line of the NW 1/4 of said Section 35, where it intersects the South right-of-way line of Conner's Highway (also known as U.S. Highway 441 and Florida State Road 15); thence Southwesterly along a curve to the left in said right-of-way, said curve having a radius of 6306.26 feet and a central angle of 2°00'47", an arc distance of 221.57 feet to the point of tangency; thence bear South 67°36'50" West, along said right-of-way, a distance of 26.43 feet to the POINT OF BEGINNING; thence continue along the aforedescribed line, a distance of 150.00 feet; thence bear South 0°55'52" West, a distance of 875.11 feet to the North right-of-way line of Levee LD-4; thence North 74°35'42" East along said right-of-way a distance of 150.00 feet; thence bear North 0°31'58" East a distance of 892.32 feet, more or less to the POINT OF BEGINNING.

Lying in and comprising a part of Section 35, Township 37 South, Range 35 East, Okeechobee County, Florida.

Parcel II

Commencing at a point on the East Boundary line of the NW 1/4 of Section 35, Township 37 South, Range 35 East, where it intersects the Southerly right-of-way line of S. R. 15 (U.S. 441) thence run South 0°00'28" East, along an extension of the East Boundary line of said NW 1/4, for a distance of 916.72 feet to a point on the Northerly right-of-way line of LD-4 of the central and Southern Florida Flood Control District, thence run South 74°36'42" West along the Northerly right-of-way line of said LD-4 for a distance of 400.00 feet for POINT OF BEGINNING. Thence continue South 74°36'42" West along said right-of-way line of LD-4 for a distance of 298.40 feet; thence run North 0°55'35" East a distance of 884.66 feet to a point on the Southerly right-of-way line of the aforesaid S. R. 15 (U.S. 441); thence run North 67°36'50" East, along the Southerly right-of-way line of said S.R. 15 (U.S. 441), for a distance of 276.43 feet, thence continuing along the Southerly right-of-way line of said S.R. 15 (U.S. 441) run South 22°23'10" East for a distance of 27.00 feet, thence run North 67°36'50" East for a distance of 21.57 feet, thence run South 0°55'52" West for a distance of 874.98 feet to POINT OF BEGINNING.

Lying in and comprising a part of Section 35, Township 37 South, Range 35 East, Okeechobee County, Florida.

Property Address:   2200 Southeast Highway 441, Okeechobee, Florida 34974.

D. P.